PHILIP BATICK, JR. *v.* EDWIN O. SEYMOUR III ET AL.

PETERS, HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued December 3, 1981—decision released April 13, 1982

*Herbert Watstein,* with whom were *Leonard Bieringer* and, on the brief, *Julius Watstein,* for the appellant (plaintiff).

*Terence D. Mariani,* for the appellees (defendants).

Shea, J. The plaintiff has appealed from a judgment rendered for the defendant in accordance with a jury verdict upon the first count of his complaint, which sounded in nuisance, and from the decision of the court granting summary judgment for the defendants on the second count, which alleged a fraudulent conveyance.[1]

Viewing the evidence most favorably toward sustaining the verdict, the jury may reasonably have found the following facts: The plaintiff was driving north along route 8 in his pick-up truck on the night of May 13, 1972, when he collided with the defendant driver's vehicle which had also been traveling north on route 8. The plaintiff, who alleged that the defendant's Karman Ghia was proceeding with no lights on, did not see it in his path until it was too late. Although he turned to the left hoping to avoid a collision, his truck hit the left rear of the defendant's car and veered to the left side of the highway where it rolled over. The plaintiff sustained severe injuries as a result of the accident and was confined to a wheel chair throughout the trial. The plaintiff had consumed one can of beer and part of another can during the evening of May 13, and a moderate odor of alcohol from him was noticed at the scene of the accident. The lights of the defendant's vehicle were working approximately one hour before the accident and the rear marker light was observed by the investigating officer to be lighted when he came to the accident scene.

---

[1] The complaint named the defendant driver Edwin O. Seymour III in the first count and both Seymour and his wife, Patricia, in the second count. Hereinafter our use of the singular defendant will refer to Edwin O. Seymour III.

## I

With respect to the nuisance count, the plaintiff claims error in the court's failure to excuse three jurors for cause, to limit both defendants to the same number of peremptory challenges allowed to him, to comply with several of his requests to charge, and to admit certain evidence as admissions of the defendant.

Because it is dispositive, we shall first consider the ruling which kept from the jury evidence of the defendant's post-collision transfer of real property to his wife. In excepting to the exclusion of this evidence the plaintiff claimed that it was admissible to show the defendant's consciousness of liability. The rule is well established that evidence is admissible that a person after the happening of an accident, or the occurrence of some other event which might render him liable, disposed of his property, on the ground that such evidence tends to show a consciousness of liability and a purpose to evade satisfaction of it. 29 Am. Jur. 2d, Evidence § 274, p. 322; see, e.g., *Poston* v. *Gaddis,* 372 So. 2d 1099, 1102 (Ala. 1979); *Bush* v. *Jackson,* 552 P.2d 509 (Colo. 1976); *Portland Gas Light Co.* v. *Ruud,* 242 Mass. 272, 136 N.E. 75 (1922); *Cox* v. *Wright-Hennepin Cooperative Electric Assn.,* 281 Minn. 228, 161 N.W.2d 294 (1968).[2] While it is true

---

[2] Kentucky has adopted the minority rule that evidence of a post-occurrence transfer is inadmissible. *Givens* v. *Berkley,* 108 Ky. 236, 56 S.W. 158 (1900). Missouri courts have limited the rule, prohibiting a plaintiff's counsel on examination from asking a defendant simply whether he conveyed property subsequent to the incident. *Amsinger* v. *Najim,* 335 Mo. 528, 73 S.W.2d 214 (1934). Counsel may, however, ask the defendant specifically whether he conveyed property in order to avoid the payment of damages he thought he had incurred. Ibid.

"that a transfer of property could be innocently motivated . . . it is the relevancy of the evidence and not its sufficiency which determines its admissibility. According to this test, it does not matter that other inferences may be equally probable. It is for the jury to determine what motivated the transfer." *Bush* v. *Jackson,* supra, 511; 2 Wigmore, Evidence (3d Ed.) § 282.

"Subsequent conduct may, in many cases, be given in evidence to affect or to show the character of prior acts or intentions." *Elwell* v. *Russell,* 71 Conn. 462, 465, 42 A. 862 (1899). Conduct of a litigant which is plainly reprehensible, such as the intimidation of a witness or flight from the scene of an accident, has commonly been admitted to show consciousness of a doubtful cause. *Gaul* v. *Noiva,* 155 Conn. 218, 224, 230 A.2d 591 (1967); *Kotler* v. *Lalley,* 112 Conn. 86, 88, 151 A. 433 (1930); *In re Durant,* 80 Conn. 140, 151, 67 A. 497 (1907). In *Banach* v. *Bohinski,* 107 Conn. 156, 139 A. 688 (1927), a negligence action, error was claimed in the exclusion of a deed by which the defendant had transferred property to his wife after the accident had occurred in which the plaintiff was injured. This court acknowledged the rule allowing such evidence of consciousness of liability, but held that the court had not abused its discretion because the conveyance was not made until nine months after the accident. "In the few civil cases in which such conveyances have been admitted for this purpose, the transfer was made at a time in such close proximity to the occurrence upon which the claim of liability was based that, in view of its character and the surrounding circumstances, an inference

that it was prompted by apprehended liability might reasonably be drawn therefrom." *Banach* v. *Bohinski,* supra, 158.

The collision in the present case happened on May 13, 1972. On August 4, 1972, the defendant driver, for "love and affection," conveyed a one-half interest in real estate to his wife. Since less than three months elapsed between the accident and the conveyance in the present case, remoteness does not provide a sustainable ground for exclusion.

In this case the court, in ruling on the defendant's objection, specifically relied not on the remoteness of the evidence but on its conclusion that the proffered evidence was more prejudicial than probative. That a court has discretion to exclude relevant evidence on this ground is clear. Tait & LaPlante, Handbook of Conn. Evid. § 8.1 (b); see *State* v. *Paoletto,* 181 Conn. 172, 186, 434 A.2d 954 (1980); *State* v. *Marquez,* 160 Conn. 47, 51–52, 273 A.2d 689 (1970); *Thibodeau* v. *Connecticut Co.,* 139 Conn. 9, 14, 89 A.2d 223 (1952); 3 Wigmore, Evidence (3d Ed.) § 792 (2). This discretion, however, has often been invoked and discussed in the context of criminal trials where the stakes are higher and prejudice may have the consequence of confinement. *State* v. *Paoletto,* supra; *State* v. *Marquez,* supra; *State* v. *Holliday,* 159 Conn. 169, 173, 268 A.2d 368 (1970). As grounds for excluding the proffered evidence the trial court mentioned that the plaintiff made no claim against the defendant until more than two years after the conveyance and that only a one-half interest in the property had been transferred. Those factors, of course, affected the weight of the evidence but not its admissibility. During the offer of proof heard in the absence of the jury, the defendant testified that he knew at the time of the

deed that the plaintiff was paralyzed, his spinal cord having been severed. He also testified that coverage under his automobile liability insurance policy was limited to $25,000 and that he had consulted an attorney about the transfer. The trial court concluded that testimony about insurance coverage and the attorney-client relationship would prejudice the defendant. The plaintiff, however, expressly disclaimed any intention to present the testimony about insurance coverage to the jury. The fact that the defendant had obtained legal advice about the transfer was not included in the offer of proof, but was elicited by counsel for the defendant. Under these circumstances we are not persuaded that the likelihood of prejudice was so great as to warrant a deviation from the general rule admitting evidence of post-accident transfers to show that the defendant did not view his position in the possible forthcoming litigation as entirely impregnable. The evidence was neither so remote nor so prejudicial that its significance upon the issues of the case could not be entrusted to the jury. See annot., 38 A.L.R.3d 996, 998 § 2.

Our conclusion of error relates only to the issue of nuisance as alleged in the complaint and would not ordinarily require a reversal of the judgment for the defendant on the first count, because the general verdict of the jury imports that the special defense raised by the defendant was also decided in his favor.[3] No interrogatories having been requested by the parties or presented in accordance with Practice Book § 312, the verdict signifies that the jury found not only the issues of the com-

---

[3] The trial court accepted the following verdict: "DEFENDANT'S VERDICT. In this case the jury finds the issues for the defendant Edwin O. Seymour III, as to liability."

plaint but also those of the special defense for the defendant. *Colucci* v. *Pinette,* 185 Conn. 483, 489, 441 A.2d 574 (1981); *Johnson* v. *Pagano,* 184 Conn. 594, 596, 440 A.2d 244 (1981). In his special defense[4] to this action of nuisance the defendant pleaded that the plaintiff's injuries resulted from "his own wilful misconduct in the operation of his automobile because he had been drinking intoxicating liquors, had paid no attention to where he was operating on said highway and caused his automobile to smash with the rear end of the vehicle being driven by the defendant . . . ."[5] Although the defendant has not claimed the benefit of the general verdict rule, it would, nevertheless, be applicable and the verdict may stand wholly on the resolution of the special defense against the plaintiff. *Kelly* v. *Bliss,* 160 Conn. 128, 132–33, 273 A.2d 873 (1970).

The plaintiff, however, claims error in the jury instructions upon the special defense because of a reference to it at one point as "contributory negligence" rather than wilful misconduct, a misstatement which he called to the attention of the trial court in excepting to the charge. Contributory negligence is no defense to an absolute nuisance. *Sheeler* v. *Waterbury,* 138 Conn. 111, 116, 82 A.2d 359 (1951); *DeLahunta* v. *Waterbury,* 134 Conn. 630, 640, 59 A.2d 800 (1948); *Beckwith* v. *Stratford,*

---

[4] The defendant pleaded the statute of limitations as a second special defense to claims of negligence or nuisance arising out of negligence. The trial judge, ruling that the plaintiff was limited by his complaint to proof of an absolute nuisance, refused to submit the statute of limitations defense to the jury. See footnote 8, *infra.*

[5] We construe the latter two claims as alleging only negligent rather than intentional conduct on the part of the plaintiff. The evidence does not support a finding that these acts of the plaintiff were intentional.

129 Conn. 506, 511, 29 A.2d 775 (1942). We are not convinced that this slip was so significant as to affect the outcome of the trial, but in reviewing the evidence we have concluded that it was insufficient to support a finding of wilful misconduct which would bar recovery by the plaintiff in his action for an absolute nuisance. "In nuisance of that order, the fault that bars recovery is fault so extreme as to be equivalent to invitation of injury or, at least, indifference to consequences." *Hoffman* v. *Bristol,* 113 Conn. 386, 393, 155 A. 499 (1931); see *Menzie* v. *Kalmonowitz,* 107 Conn. 197, 199–200, 139 A. 698 (1928). The only evidence of "wilful misconduct" presented was that the plaintiff drank one and one-half cans of beer during a three and one-half hour fishing outing on the evening of the accident and that a police officer who came to the scene "detected a moderate odor of alcohol" on the plaintiff's breath. The jury may have disbelieved the plaintiff's testimony about the quantity of beer involved but could not speculate that he had consumed a greater amount. See *Martino* v. *Grace-New Haven Hospital,* 146 Conn. 735, 736, 148 A.2d 259 (1959); *Edwards* v. *Grace Hospital Society,* 130 Conn. 568, 575, 36 A.2d 273 (1944). We need not decide whether this evidence of intoxication would have been sufficient to support a finding of negligence. See *Way* v. *Pavent,* 179 Conn. 377, 379–80, 426 A.2d 780 (1979); *Higgins* v. *Champ,* 161 Conn. 200, 203, 286 A.2d 313 (1971). It was clearly insufficient as a matter of law to sustain the defendants' burden of proving their special defense of wilful misconduct.

The trial court, although recalling "no evidence of intoxication," nevertheless submitted to the jury the issue of whether the plaintiff had "intentionally caused his intoxication." Under the unusual cir-

cumstances of this case, we regard the submission of the issue of wilful misconduct as plain error cognizable under our rules even in the absence of an exception. Practice Book § 3063. The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding. *Miles* v. *Sherman,* 116 Conn. 678, 683, 166 A. 250 (1933); *Fine* v. *Connecticut Co.,* 92 Conn. 626, 630–31, 103 A. 901 (1918). "In a case such as the one before us, where the error is clear and is one which may well have been determinative, it should be considered in the interest of 'justice between the parties.' " *Capozzi* v. *Luciano,* 174 Conn. 170, 175, 384 A.2d 359 (1978) *(Speziale, J.,* dissenting); see *Kavanewsky* v. *Zoning Board of Appeals,* 160 Conn. 397, 401, 279 A.2d 567 (1971); *Leary* v. *Citizens & Manufacturers National Bank,* 128 Conn. 475, 478–79, 23 A.2d 863 (1942). There is a special circumstance present in this rare case which induces us to exercise our discretionary power under § 3063 to notice plain error not raised below. We cannot in all fairness invoke the general verdict rule and rely upon the presumed finding of the jury of the efficacy of the special defense when it is apparent that there is insufficient evidence as a matter of law to support this alternative basis for the verdict. The plaintiff, therefore, cannot be denied the new trial which the erroneous evidentiary ruling of the trial court would otherwise warrant.

Some of the remaining claims of error are likely to arise again at a new trial and we shall discuss them. One such claim is that the defendant wife was not entitled to any peremptory challenges for the selection of the jury at the trial of the first count of the complaint which was directed against only the defendant husband. The court ruled that each

defendant would have the number of such challenges allocated to each party by statute[6] because the same jury would be used for the trial of the second count, even though that count would not be tried until a verdict on the first count had been rendered. This ruling was undoubtedly correct. See *Krause* v. *Almor Homes, Inc.,* 147 Conn. 333, 336, 160 A.2d 753 (1960).

Another issue which may recur is the exclusion of a question claimed to show a tacit admission by the defendant that his lights were not in operation at the time of the accident. The plaintiff in responding to the motion of the defendants for a summary judgment on both counts of the complaint had stated in his counter-affidavit[7] that there were no lights on the car which he struck. The plaintiff sought to inquire of the defendant about his failure to have filed another affidavit denying this assertion. To render such testimony admissible it was essential to establish that the defendant was aware of the statement made by the plaintiff, that he had the opportunity to speak, that the circumstances naturally called for a reply and that he remained silent. *Obermeier* v. *Nielsen,* 158 Conn. 8, 12, 255 A.2d 819

---

[6] General Statutes § 51-241 provides as follows: "On the trial of any civil action to a jury, each party may challenge peremptorily three jurors."

General Statutes § 51-243 (now § 54-82h) provides in the event alternate jurors are to be selected, that each party may peremptorily challenge four jurors in a civil action tried to a jury.

The trial court allowed four challenges to the plaintiff and eight to the defendants.

[7] The defendants filed a motion for summary judgment on both counts of the complaint on February 22, 1980, approximately three and one-half months before trial. The plaintiff filed an opposing affidavit and that motion for summary judgment was denied. The defendant also filed a later motion for summary judgment after the verdict on the first count, and this second motion is discussed in part III of the opinion.

(1969). The trial court concluded correctly that the circumstances proved did not indicate that a response by the defendant would be reasonably expected. There is no provision of the Practice Book requiring such a reply affidavit to be filed and the defendant's answer to the complaint included a denial of the allegation that his lights were out.

The remainder of the plaintiff's claims involve his numerous requests to charge. The substance of many of them was included in the instructions given to the jury. Some are simply partisan or argumentative phrasings of standard legal principles. Others request simply a charge upon certain statutes without reference to the facts which would make the statute applicable. See Practice Book § 318. It is unlikely that the plaintiff will submit the same requests at a new trial and we see no purpose in discussing them in more detail.

## II

The plaintiff claims that his second count, which alleged a fraudulent conveyance, was not suitable for disposition by summary judgment since the issue of the defendant's intent in transferring his property was genuine, material and not capable of resolution without a trial. See Practice Book § 384. We would have no occasion to discuss this question if the judgment on the first count of the complaint had been affirmed, because it would be moot. The trial court also could have dismissed the second count for the same reason once judgment had been rendered on the first count. The procedure followed by the trial court of deciding the second count on its merits was preferable, however, because it provided a separate basis for the disposition of that count which could be reviewed upon appeal independent of the result on the first count.

The defendant moved for summary judgment on the second count after judgment on the first count of nuisance[8] was rendered in accordance with the verdict for the defendant. In support of the motion, affidavits of the defendant and the attorney who had handled the conveyance were filed. Practice Book § 380. In his affidavit, the defendant stated the following facts concerning his intentions in making the transfer: "At no time did I ever suspect that Mr. Battick (sic) would have any claim against me for this accident. The conveyance of the interest of real estate to my wife was the result of both estate planning, and the carrying out of a promise I had made to her before marriage. It was not an attempt to fraudulently conceal any of my assets from the Plaintiff." The affidavit submitted by the attorney stated that he was consulted by both defendants in July, 1972, about estate planning and that he advised that a one-half interest in the real estate be transferred to the defendant wife as part of their estate plan. He also said that he learned of the accident at that time but did not anticipate that the plaintiff would bring suit.

The plaintiff chose not to file an opposing affidavit, presumably because he had no personal knowledge of the mental state which influenced the defendant to quitclaim a one-half interest in his house to his wife. See Practice Book § 381. Instead he filed a memorandum of law opposing the defendant's motion for summary judgment. The thrust of the memorandum, which is virtually repeated in his

[8] The plaintiff's complaint sounded in nuisance rather than negligence, because service was not made upon the defendant until May 2, 1975; see *Seaboard Burner Corporation* v. *DeLong*, 145 Conn. 300, 303, 141 A.2d 642 (1958); more than two years after his injuries were sustained and therefore after the statute of limitations on negligence had run. See General Statutes § 52-584.

brief filed in this appeal, was that the defendant had failed to show "the non-existence of any genuine issue as to all material facts. . . ."

## A

We first must consider the effect of the plaintiff's failure to file an opposing affidavit in the summary judgment proceeding. Practice Book § 380 provides that "[t]he adverse party . . . shall file opposing affidavits and other available documentary evidence."[9] The plaintiff did attach copies of the quitclaim deed which effectuated the transfer and a deposition taken of the defendant in which he admitted that he and his wife were aware of the plaintiff's serious injuries at the time the deed was executed. There is no reason to suppose that the plaintiff had personal knowledge of any of the facts relating to the transfer. His proper course would have been to file an affidavit stating that he could not, "for reasons stated, present facts essential to justify his opposition . . . ." Practice Book § 382. *Dorazio* v. *M. B. Foster Electric Co.,* 157 Conn. 226, 253 A.2d 22 (1968). Nevertheless, the court was not entitled to assume the truth of the defendant's declarations concerning his intentions in making the conveyance simply because of the absence of an affidavit contradicting them. It was clear from the documents filed by the plaintiff with his memorandum of law that there was a genuine dispute over the defendant's intentions and that the plaintiff had done everything he could to present facts to controvert the defendant's assertion that the transfer was unrelated to the accident. The inference which may ordinarily be drawn from the failure of a party to

---

[9] The word "shall" was inserted by a 1966 amendment to the former Practice Book § 299 to replace "may."

file an opposing affidavit is not warranted where the other party is the only person having knowledge of the particular facts involved. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Practice Book § 381. In no way could the plaintiff have complied with these requirements of the rule in an affidavit pertaining to the defendant's mental state at the time of the transfer. Although it would have been preferable for the plaintiff to have followed the procedure of explaining his predicament in accordance with Practice Book § 382, we do not regard his failure to do so as fatal, since his inability to file an opposing affidavit was obvious.

## B

Our conclusion that the absence of a counter-affidavit from the plaintiff does not under the circumstances of this case justify the granting of a summary judgment does not entirely resolve its propriety. The defendant argues that summary judgment was appropriate since it was designed to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full trial. *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 306–307, 407 A.2d 971 (1978); *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 375–76, 260 A.2d 596 (1969); *Rathkopf* v. *Pearson,* 148 Conn. 260, 264, 170 A.2d 135 (1961). There are situations, however, which do not lend themselves to summary disposition. "It is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have

drawn deal with questions of motive, intent and subjective feelings and reactions." *United Oil Co. v. Urban Redevelopment Commission,* supra, 376, citing *White Motor Co. v. United States,* 372 U.S. 253, 259, 83 S. Ct. 696, 9 L. Ed. 2d 738 (1963).

"In passing on the defendant's motion for summary judgment the trial court was limited to deciding whether an issue of fact existed, but it could not try that issue if it did exist." *Associates Discount Corporation v. Smith's Lincoln-Mercury Sales, Inc.,* 153 Conn. 176, 180, 214 A.2d 909 (1965). The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. *D.H.R. Construction Co. v. Donnelly,* 180 Conn. 430, 429 A.2d 908 (1980); *Yanow v. Teal Industries, Inc.,* 178 Conn. 262, 268, 422 A.2d 311 (1979); *Dougherty v. Graham,* 161 Conn. 248, 250, 287 A.2d 382 (1971). The test is whether a party would be entitled to a directed verdict on the same facts. *United Oil Co. v. Urban Redevelopment Commission,* supra, 380. "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." *Sartor v. Arkansas Natural Gas Corporation,* 321 U.S. 620, 624, 64 S. Ct. 724, 88 L. Ed. 967 (1944). In the case before us the jurors would not have been compelled to believe the defendant's declarations that his motivation in executing the deed to his wife was wholly unrelated to any concern about his potential liability to the plaintiff even though no other evidence than that presented in the summary judgment proceeding came before them. "That a fact was testified to and was not directly contradicted by another witness is wholly insufficient." *Martin v.*

648

*Kavanewsky,* 157 Conn. 514, 515, 255 A.2d 619 (1969). We conclude that the defendant's intention at the time of the transfer was a disputed material issue of fact and that there was error in rendering a summary judgment.

There is error, the judgment upon each count is set aside and the case is remanded to the trial court for a new trial.

In this opinion the other judges concurred.