[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This action involves an alleged contract between plaintiff L.G. Masonry Contractors, Inc., a subcontractor, and defendant Carlin Contracting Co., Inc., a general contractor. The alleged contract involved masonry work to be provided for a state construction project at Vinal Regional Vocational Technical School in Middletown, Connecticut. On or about April 1, 1988, plaintiff submitted a bid for the masonry subcontract to the defendant. The defendant used this bid in its general contract bid to the state, and was subsequently awarded the contract by the state.
Between May and July of 1988, Sal Lenares, an officer of the plaintiff, engaged in contract negotiations on the subcontract with Peter Celella, an employee of the defendant who was project manager for the Vinal Tech project. In late July, 1988, Celella, by his secretary Sandy Ruddy, sent Lenares two copies of an unexecuted written subcontract for the masonry work, with instructions to sign and return them. Plaintiff returned the contracts, signed, to the defendant in early August, 1988. On or about August 18, 1988, the defendant notified plaintiff that plaintiff's inability to furnish a performance bond necessitate defendant's provision of masonry work by other means. While denying the existence of a subcontract with plaintiff, defendant stated that if plaintiff believed such a subcontract existed, defendant was terminating it pursuant to paragraph 16 of the subcontract form agreement. Plaintiff demanded that defendant honor the contract, defendant refused, and this lawsuit resulted.
In a three count amended complaint plaintiff alleges breach of contract, violation of the Connecticut Unfair Trade Practices Act (CUTPA), and fraudulent misrepresentation. Defendant has pled the following special defenses: failure to state a cause of action; statute of frauds; plaintiff changed or added terms to the subcontract form agreement prior to returning the document to the defendant, which constituted a counter-offer by plaintiff which the defendant never accepted, resulting in no contract being formed; and paragraph 16 of the contract signed by plaintiff gave the defendant the right to terminate the contract for any reason, which right defendant exercised by way of letter to the plaintiff on August 18, 1988.
The pleadings are closed between the parties, and defendant now moves for summary judgment on all counts. CT Page 1363
The defendant makes the following arguments:
1. No contract was ever formed because there was no meeting of the minds or agreement on the terms of the alleged contract. In support of this position the defendant states that the unexecuted subcontract forms and riders sent to plaintiff contained a number of terms which differed from those proposed in plaintiff's bid, and that the plaintiff made material changes to the terms in those forms and riders before executing and returning them to the defendant. Defendant argues that at best what transpired was a series of offers and counter-offers; an acceptance of mutually agreed upon terms or conditions was never made, and, therefore, no contract was formed.
2. Even if an agreement is found to exist between the parties, it violates the statute of frauds and is therefore unenforceable. Defendant's position is that the masonry work for the construction project was projected to last through and beyond December, 1989. If a contract was formed in July or August of 1988 as is alleged, defendant argues that the performance of such alleged contract would extend beyond a year and thus come within the statute of frauds. Since no one from the defendant contracting company ever signed the written subcontract and rider forms, defendant argues that any agreement contained therein is unenforceable against defendant as a matter of law.
3. The actions of the defendant in terminating for convenience any alleged contract pursuant to paragraph 16 of the subcontract form were forthright and responsible and not violative of CUTPA. Although defendant maintains its position that there is no contract, it alternatively argues that its termination of the contract pursuant to the termination clause was justified by plaintiff's inability to post payment or performance bonds. Defendant argues that to have awarded the work to plaintiff under these circumstances would have been reckless, and could have cost the state millions of dollars had the plaintiff failed to perform. Defendant also contends that Conn. Gen. Stat. sec. 4b-95 sanctions the action of defendant in terminating plaintiff.
4. Plaintiff cannot maintain a cause of action for intentional or reckless misrepresentation because he cannot establish that the acts of the defendant constituted a clear and definite statement awarding plaintiff the masonry subcontract. Even if plaintiff assumed that he had been awarded the subcontract, defendant argues that such an assumption was unreasonable under the circumstances, and reliance on that assumption was unjustified in light of the statute of frauds. Further, defendant CT Page 1364 argues that as plaintiff took no action to its detriment, it has suffered no injury.
The plaintiff makes the following arguments:
1. Summary judgment is not proper in this case because there are numerous issues of material fact concerning plaintiff's breach of contract claim. Specifically, plaintiff argues that whether an agreement exists is a question of fact, and that the evidence conflicts on this issue. Plaintiff also argues that whether the subcontract executed by its officer Sal Lenares is an acceptance or a counter-offer is a question of fact and goes to the parties' intentions, and summary judgment, therefore, is inappropriate.
2. The statute of frauds is not applicable to the agreement, or if it is, it has been complied with. Plaintiff argues that the written subcontract does not state that the contract was to be for more than one year, and the contract is actually of uncertain duration, and therefore is not within the statute of frauds. Alternatively, plaintiff argues that the transmittal letter signed by Sandra Ruddy is sufficient to satisfy the statute.
3. The termination clause (paragraph 16, of the subcontract) is unconscionable as drafted because it is unilateral in favor of the defendant, therefore the court should ignore the clause and reform the contract. Plaintiff argues that because the termination clause is unconscionable, defendant is not entitled to summary judgment based on it.
4. Issues of fact exist as to whether defendant's actions in negotiating with plaintiff, knowing plaintiff could not post a bond, constitute unfair or deceptive trade practices in violation of CUTPA. Because whether an action violates CUTPA is a question of fact and plaintiff has alleged several CUTPA violations, plaintiff argues summary judgment is not proper.
5. Whether defendant's actions in negotiating with plaintiff knowing its inability to post a bond would prevent plaintiff from being the subcontactor constitute fraudulent misrepresentation is a question of fact. Because an issue exists as to whether defendant intended to induce action by the plaintiff, summary judgment is inappropriate.
Summary judgment is a means of resolving litigation when. "The pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Conn. Practice Book Sec. 384 (rev'd to 1978). Complex CT Page 1365 cases generally need the full exploration of a trial, and are therefore inappropriate for summary judgment. United Oil v. Urban Redevelopment Commission, 158 Conn. 364, 375 (1969). Cases involving inferences regarding questions of motive and intent may also be inappropriate for summary judgment. Batick v. Seymour, 186 Conn. 632, 646-47 (1982).
In order to show the existence or nonexistence of a "genuine issue" of material fact, the parties "must bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." United Oil Co.,158 Conn. 378-79.
The burden of showing the nonexistence of a genuine issue of material fact and therefore the entitlement to judgment as a matter of law is on the moving party. Mingachos v. CBS, Inc., 196 Conn. 91 (1985). The facts presented to the court must be viewed in the light most favorable to the nonmovant. State v. Goggin, 208 Conn. 606, 616 (1988). To satisfy his burden, "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. Batick v. Seymour,186 Conn. 632, 647 (1982).
The role of the court in a motion for summary judgment is to determine whether a genuine issue of material fact exists, not to try such issue if it is found to exist. Batick,186 Conn. at 647. "A defendant's motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." Perille v. Raybestos-Manhattan-Europe, Inc., 196 Conn. 529, 543 (1985).
In this action a genuine issue of material fact exists regarding whether the parties intended to, and did, enter into a subcontract for the masonry work. Whether a contractual commitment has been undertaken rests on a determination of what the parties intended. Otto Contracting Co. v. S. Schinella Son, Inc., 179 Conn. 704, 709 (1980). Intention is a question of fact. Id.
Plaintiff has alleged that it submitted a bid to the defendant, which was incorporated by the defendant into the bid submitted to the state. (Amended Complaint, Count 1). Plaintiff's bid contained three exclusions. (Defendant's Exhibit A). Plaintiff has submitted two affidavits in opposition to the motion for summary judgment. Plaintiff's Exhibit A is the affidavit of Peter Celella. In this affidavit Celella states that he was employed by the defendant as the Project Manager on the CT Page 1366 Vinal Tech project between April and August of 1988, and was responsible for negotiating the subcontract at issue. He states that the defendant's policy was that no contract was sent to a subcontractor until approved by either Patrick Carlin or Bob Grenier, and that Grenier authorized Celella to send the subcontract to the plaintiff. Celella further states that the exclusions added to the subcontract form by Sal Lenares had been discussed and negotiated with the defendant, and were clarifications, not changes, to the negotiated agreement, and accurately represented the negotiated responsibility of the plaintiff.
Plaintiff's Exhibit B is the affidavit of Salvatore Lenares, Vice President of the plaintiff. Lenares states that he was contacted by Celella in mid-June of 1988 for the purpose of negotiating the masonry subcontract, and that subsequently he received from the defendant two original subcontracts and a transmittal letter instructing him to execute and return both subcontracts to Carlin Contracting. He further states that he executed the subcontracts, inserted the provisions negotiated with Celella, and returned the subcontracts to the defendant on July 27, 1988.
In an affidavit submitted in support of the motion (Defendant's Exhibit B) Patrick Carlin, President of Carlin Contracting, states that Peter Celella did not have authority to enter into a contract with the plaintiff, and that Carlin told Sal Lenares that no subcontract could be made unless plaintiff could post a bond.
The evidence submitted by the parties raises questions of material fact on the issue of whether a contract was entered into. The defendant has not met its burden of showing "That it is quite clear what the truth is", and therefore summary judgment should be denied.
Because the threshold factual issue of the intent of the parties to the contract underlies the claims in the second and third counts of the amended complaint (CUTPA and fraudulent misrepresentation), summary judgment is not appropriate as to those counts.
Accordingly, defendant's motion for summary judgment is denied.
ARNOLD W. ARONSON JUDGE, SUPERIOR COURT