[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Defendant Willard Greenwald has moved for summary judgment as to the claims of the plaintiff, Carl Jordan, who alleges that this defendant caused him injury in the course of performing a medical examination at the behest of the plaintiff's employer.
In his complaint, the plaintiff alleges that defendant Greenwald departed from the standard of care in the manner in which he percussed the plaintiff's spine in the course of the examination, and that this breach caused injury to the plaintiff's back. In the second count of his complaint, the plaintiff alleges that defendant Greenwald breached a contract with the plaintiff.
Practice Book 384 provides that summary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Connelly v. Housing Authority, 213 Conn. 354, 364 (1990); Zichichi v. Middlesex Memorial Hospital, 204 Conn. 399, 402,528 A.2d 805 (1987). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908
(1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Practice Book 380, 381; Burns v. Hartford Hospital, [192 Conn. 451, 455, 472 A.2d 1257 (1984)]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson, 176 Conn. 304, 309, 407 A.2d 971 (1978)." Strada v. CT Page 711 Connecticut Newspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005
(1984). "The test is whether a party would be entitled to a directed verdict on the same facts." Batick v. Seymour, 186 Conn. 632,647, 443 A.2d 471 (1982).
In alleging that defendant Greenwald departed from the standard of care to be followed by medical practitioners performing examinations of claimants for purposes of evaluation of the injury, the plaintiff is clearly raising an issue requiring expert testimony both as to the standard of care and as to causation of the claimed injury resulting from its breach. Shelnitz v. Greenberg, 200 Conn. 58, 66 (1986); Cross v. Hutenlocher,185 Conn. 390, 393 (1980); Pisel v. Stamford Hospital, 180 Conn. 314,334 (1980).
The defendant Greenwald has presented, in support of his motion for summary judgment, an affidavit stating that in the course of his examination of the plaintiff he palpated his spine in a manner that did not elicit from the plaintiff any complaint or gestures indicating pain. The defendant states in his affidavit that he did not deviate from the standard of care required of an orthopedic surgeon performing an independent medical examination.
The plaintiff has provided no counter affidavit but relies on an unsworn statement of a Dr. James R. Merikangas: "based upon Mr. Jordan's report of [the Greenwald] examination it was improperly performed." Under oath, at a deposition, Dr. Merikangas testified that it would be a departure from the standard of care for an examining physician to push and force an examinee to bend beyond the point at which he was reporting pain. (Tr., 162) Dr. Merikangas testified that where the examinee does not report or physically indicate pain, as by flinching, he would conclude that the examiner "didn't do anything wrong" by proceeding with the examination (Tr., 63) and that he would have "no criticism" of Dr. Greenwald's examination if the facts were that the plaintiff at no time communicated through any act or word that the examination was causing him pain (Tr., 63).
The plaintiff has offered no statement under oath to indicate that the facts of the examination were such that Dr. Greenwald ignored any flinching or complaints of pain or that he persisted in applying pressure to the plaintiff's body after any indication of any kind that his examination was causing any pain or distress. At a deposition conducted by defendant counsel, the plaintiff described how Dr. Greenwald had percussed his spine starting low on CT Page 712 his back and moving upward. The plaintiff did not claim to have told Dr. Greenwald that the percussion of his spine was causing him pain. Though he stated that he "leaned forward" (Tr., 28) at the point when he anticipated that the examiner would percuss an area of his back that "is a sensitive area" (Tr., 28), he denied having "jerked" away (Tr., 28) and immediately amended his description of his own conduct to state that he did not lean forward until "the moment of impact" (Tr., 29) and that any reaction he had was after the area was touched, not before:
 Q. Is it fair to say than that you felt the sensitivity on the last time he struck your back, which is between your shoulder blades, and no other time did you feel any pain as a result of that?
A. That's right.
 Q. Okay, now, what you felt when he stuck you, we'll call it in between your shoulder blades, that's the last time he stuck you with the base of his hand. How would you describe that sensation?
 A. Well, it's a sensitive area, so I was apprehensive about it, but I knew it was coming. So, I don't know how to describe it because I can't say it hurt at the moment of impact. It didn't.
Q. So, it didn't hurt at the time of impact?
 A. No. It just gave me — like I pulled away because I was anticipating it to hurt.
 Q. Did you jerk away from him when he struck you in that area?
 A. No, I didn't jerk away. I just kind of leaned forward.
 Q. As a result of leaning forward, did he hit you with less force in that area than he hit you in the other areas?
 A. No, no. As I say, it was at the moment of impact when I did lean forward. It wasn't — he didn't do anything to stop the impact really. I mean, it was — I CT Page 713 did it after.
Q. Did you jerk forward after he hit you then?
A. Yes.
 Q. Was there any more force to the impact in between your shoulder blades than any of the other percussions of your back?
A. No, I don't think. I don't recall, though.
 Q. At the time you were examined by Dr. Greenwald, was your back bothering you?
A. No.
 Q. Were you on any medication for your back when you saw Dr. Greenwald?
A. I don't think so. (Tr., 28-29)
Through his counsel, the plaintiff argues that he had a better recollection of the facts of the examination at the time he described it to Dr. Merikangas and that since Dr. Merikangas initially stated in his report that there was a departure from the standard of care, the plaintiff must have initially described different conduct. This argument suggests that the mere possibility that a party has told a different version of the facts or may tell a different version of the facts at trial than he has told under oath constitutes a "genuine issue as to any material facts" within the meaning of 384 P.B.
The plaintiff has offered no sworn statement to negate the plain implication that arises from his deposition testimony, that is, that he did nothing to alert Dr. Greenwald that he was experiencing pain from the method of physical examination. His own expert, Dr. Merikangas, stated that such a report or flinching reaction would be the necessary foundation for any opinion that Dr. Greenwald deviated from the standard of care. Though 382 P.B. provides for some accommodation where a party opposing a motion for summary judgment cannot, for reasons stated, present facts essential to justify his opposition, the plaintiff has not invoked that provision. The plaintiff has not indicated that sworn supporting testimony not now available will be available in the CT Page 714 future. The plaintiff has not, indeed, presented affidavits or any sworn testimony justifying his opposition but argues, in effect, that a jury might base a verdict on some of his comments at his deposition, even though his testimony as a whole would not support a factual conclusion that by word or action he gave Dr. Greenwald any reason to believe that he should not percuss his back in the manner described.
The only expert witness disclosed by the plaintiff indicated that the method of examination utilized by Dr. Greenwald would be a deviation from the standard of care only if the examiner continued to percuss after an indication by the examinee that the method was causing pain. The account of the examination given by the plaintiff under oath, taken as a whole, indicates that he registered pain only after being struck in a particular area, and not before that area was struck by Dr. Greenwald as he proceeded in percussing the plaintiff's spine, and that he gave Dr. Greenwald no indication that he should not proceed with the examination. The court finds that the plaintiff has identified no genuine issue of material fact but only that an expert who opined in a report that there was a deviation from the standard of care on the basis of a particular understanding as to the circumstances of the examination does not find a deviation where the circumstances are, instead, as stated by the plaintiff under oath.
As the Supreme Court indicated in Batick v. Seymour, 186 Conn. 632,647 (1982) the test for summary judgment is the same as for a motion for a directed verdict.
A motion for a directed verdict can be granted only where there is insufficient evidence of a good faith claim to send the issue to the jury, Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 172,123-4 (1976), and where the jury could not reasonably and legally reach a verdict for the plaintiff, considering the evidence in the light most favorable to the plaintiff Mather v. Griffin Hospital, 207 Conn. 125, 130 (1988); Bound Brook Ass'n. v. Norwalk,198 Conn. 660, 667, cert. den., 479 U.S. 819 (1986); Bleich v. Ortiz, 196 Conn. 498, 501 (1985).
Since the only announced medical expert has stated under oath that the circumstances now described by the plaintiff do not constitute a departure from the standard of care, a directed verdict would be warranted. The situation indicates a lack of evidence of an expert nature from which the jury could reasonably conclude that the defendant was negligent. CT Page 715
Accordingly, summary judgment is appropriate in favor of the defendant Greenwald as to Count One of the complaint. See Guzze v. New Britain General Hospital, 16 Conn. App. 480, 485 (1988).
Count Two of the complaint rests on a theory of breach of contract. At paragraph 6 of his complaint, the plaintiff alleges that he relied on Dr. Greenwald's "contract agreement, understanding, promises, warrantee and/or representation that said insurer's orthopedic medical examination and testing would be conducted safely and that same was safe and could not possibly cause physical harm to the plaintiff." The plaintiff further alleges that this contract, warranty or representation was breached.
In order to prevail on his claim of breach of contract, the plaintiff has the burden of proving the existence of a contract and breach by the defendant.
In his affidavit, defendant Greenwald has denied making any promise, contract or representation to the plaintiff concerning the examination or its result. The plaintiff has not filed an affidavit stating any disputed facts constituting a contract but refers the court to his deposition testimony and argues that his submission to examination was based on an implied contract that the examination would be completed in a manner that would not cause him pain or harm. The plaintiff's deposition testimony does not create any dispute as to material facts that a jury might find gave rise to a contract. The plaintiff admitted that he was examined by Dr. Greenwald not as a voluntary arrangement but because he was required to submit to examination as a condition of receiving benefits from his employer:
Q. You went to him against your will; isn't that right?
 A. Well, yeah. I really wasn't given a choice in the matter. (Tr., 117). . .
 Q. Whatever Dr. Greenwald told you the exam was going to consist of, you were going to do that; isn't that right?"
A. That's right. (Tr., 117)
This interchange establishes that the parties are in agreement that the examination complained of was not the product of a CT Page 716 contractual relationship between doctor and patient, but of the plaintiff's compliance with a requirement by his employer in connection with his receipt of benefits.
In his brief in opposition to the motion for summary judgment the plaintiff argues that representations by Dr. Greenwald nevertheless gave rise to a contract. The plaintiff's actual testimony under oath was to the effect that he did not recall what, if anything, Dr. Greenwald said about the examination:
 Q. When you went to see Dr. Greenwald for the examination, did Dr. Greenwald make any type of a promise to you?
A. A promise?
Q. Yes.
A. No.
 Q. Did he express a promise to you that his examination would not hurt you?
 A. I think he did say something like this: "It shouldn't hurt at all," or something like that.
Q. He said that in the room?
 A. He made some kind of reference to "This won't be any big deal," or something along those lines.
Q. But you don't recall exactly what he said?
A. No. I don't recall now, no.
 Q. You don't recall whether he said to you that, you know, "The examination I'm going to do isn't going to hurt you?"
A. He may have said that.
Q. You just don't recall?
A. I don't recall right now if he said that or not. CT Page 717
The plaintiff has offered no affidavit to establish the existence of any actionable representation concerning the method or nature of the examination. Under oath, he indicated that he did not recall whether or not Dr. Greenwald made any such statement. At most, his testimony was that such statements "may have" been made. Without actual evidence that a statement in the nature of a contract, guaranty or representation was made, no liability could be based on the second count of his complaint, and a directed verdict would be required as to this count.
Moreover, when the claimed breach of contract amounts to a claim of departure from the standard of care in performing an examination, it has been held that, except in certain circumstances not present here, no separate cause of action may be maintained based on breach of contract Lapis v. Milford Hospital, Docket No. 87 26 53 05 (J.D. New Haven 1991).
The court finds that there is no genuine dispute as to any material issue of fact and that the plaintiff cannot now and does not indicate that he can in the future support any factual claim that defendant Greenwald departed from the standard of care, nor that there are any facts supporting a separate cognizable claim for breach of contract.
Defendant Greenwald's motion for summary judgment is granted as to Counts One and Two of the complaint.
The movant shall recover his statutory court costs.
Beverly J. Hodgson, Judge