[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ONMOTION FOR SUMMARY JUDGMENT
On June 14, 1993, the plaintiff, Aetna Casualty Surety Co. [Aetna], filed a one count declaratory judgment action against the defendants, Angus Best and Odell Boykin. In its complaint Aetna alleges that it issued a homeowner's liability policy to Best's mother, Ernestine Omar-Howard, covering Omar-Howard's premises and all its inhabitants related to Omar-Howard, and that the policy was in effect on January 24, 1991. Aetna further alleges that on that date, Best, who lived with Omar-Howard, intentionally beat and struck Tyrone Thomas, who suffered severe injuries and died a short time later. Aetna alleges that Boykin, the executrix of the estate of Thomas, brought an action against Best seeking damages for Thomas's injuries and wrongful death as a result of Best's negligent and reckless conduct. Aetna alleges that under the terms of the liability policy issued by it to Omar-Howard, it is obliged to defend Best in the civil suit filed by Boykin and indemnify Best for any damages assessed against him in the suit, unless Best's actions or the incident do not fall within the policy provisions for coverage or unless they CT Page 800 fall within the policy exclusions. Aetna seeks a declaratory judgment that the homeowner's policy does not furnish coverage for Best in the civil action brought against him by Boykin for any damages assessed against him, and that the policy does not obligate Aetna to defend Best in that action.
On January 24, 1994, Boykin filed an answer. On March 18, 1994, Best was defaulted for failure to plead. On May 10, 1995, Aetna filed an amended complaint adding allegations of intentional conduct by Best as a result of the filing of an amended complaint by Boykin in the underlying action adding allegations of intentional conduct by Best.
On May 12, 1995, Aetna filed a motion for summary judgment, accompanied by a memorandum of law, a copy of the proposed amended complaint in the underlying action, Boykin v.Best, CV92-0511180S, a copy of the homeowner's liability policy issued to Omar-Howard, and uncertified copies of excerpts from transcripts of court proceedings and statements made to the Bloomfield police by LeRone Jackson and Darian West. Aetna later submitted an affidavit by Mary Lou Sullivan, Team Leader, Aetna Underwriting Department, attesting that the copy of the homeowner's policy attached to the motion for summary judgment is a true copy of the policy issued to Omar-Howard.
Boykin filed an objection to the motion for summary judgment dated June 12, 1995, accompanied by a memorandum of law, a copy of the proposed amended complaint in the underlying action, a copy of a portion of the homeowner's liability policy issued to Omar-Howard, and uncertified copies of excerpts from transcripts of court proceedings, excerpts from the deposition transcripts of Darian West and Malka Shah, M.D., and a statement made to Bloomfield police by LeRone Jackson.
Summary judgment is appropriate "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384; see Barrett v. Danbury Hospital, 232 Conn. 242, 250, (1995). "The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of CT Page 801 law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 105, 639 A.2d 507 (1994). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Barrett v.Danbury Hospital, supra; see Suarez v. Dickmont PlasticsCorp., 229 Conn. 99, 106, 639 A.2d 507 (1994).
"A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath,
disclosures, written admissions and the like." (Emphasis added.) Practice Book § 380. "`Uncertified copies of excerpts of deposition transcripts are not admissible as evidence and do not comply with the requirements of Practice Book [§] 380.' Oberdick v. Allendale Mutual Insurance Company,9 Conn. L. Rptr. 607, 608 (August 25, 1993) (Celotto, J.). `Copies of uncertified and unauthenticated deposition testimony may not be used in deciding a motion for summary judgment.' Balderston v. Shoals Construction, Inc.,9 Conn. L. Rptr. 343 (July 1, 1993) (Lewis, J.)." Valerio v.International Business Machines Corp., Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 0366953 (September 1, 1994) (Hennessey, J.).
As noted above, both parties submitted uncertified copies of excerpts of deposition testimony or testimony at the criminal proceedings against Best. Although the court could find that these excerpts should not be considered in deciding the motion for summary judgment in that the parties have not complied with the requirements of Practice Book § 380, the court will decide the issue on the merits.
Aetna argues that no genuine issue of material fact remains because the facts alleged in the underlying action show that the incident was not an accident, and thus not an "occurrence" covered by the homeowner's policy. Aetna further argues that no genuine issue of material fact remains that Best's actions were intended to do bodily harm; therefore, the incident falls within the policy exclusion for intentional or expected bodily injury.
Boykin argues that Aetna is collaterally estopped from CT Page 802 arguing that Best's conduct was not reckless, and the insurance policy does not exclude conduct that is reckless. Boykin argues that the issue of whether Best's actions were intentional was not litigated in the criminal trial, so that Best's intent has not been conclusively established. Boykin also claims that a genuine issue of material fact remains as to whether Best intended to commit the injury that resulted — the death of Tyrone Thomas. Boykin further argues that because the insurer's duty to defend is broader than the duty to indemnify, Aetna has a duty to defend against the allegations of negligence and recklessness in the underlying complaint.
Under the terms of the policy issued by Aetna to Omar-Howard, Aetna will provide liability coverage and a defense "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies." (Certified copy of policy, section II — Liability Coverages, Coverage E, p. 13). "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general conditions, which results, during the policy period, in: a. bodily injury; or b. property damage." (Certified copy of policy, Definitions, p. 1, para. 6, as amended by endorsement dated 9/90). The policy further provides that coverage E does not "apply to bodily injury or property damage: a; which is expected or intended by any insured." (Certified copy of policy, section II — Exclusions, p. 14, para. 1).
"Accident" is not defined in the policy. "Accident is defined as "[a]n unexpected, undesirable event. . . . an unforeseen incident. . . . Lack of intention; chance." American Heritage College Dictionary (3d Ed. 1993), p. 8.
In the underlying complaint, Boykin alleges in the first count that Best, "while engaged in rough horseplay, negligently and carelessly struck the plaintiff's decedent about the back, chest, face and head causing the plaintiff's decedent to suffer the severe personal injuries resulting in his death as hereinafter set forth." (Amended complaint, first count, para. 5). In the third count, Boykin alleges that Best, "while engaged in rough horseplay, recklessly struck the plaintiff's decedent." (Amended complaint, third count, para. 5). In the fifth count, Boykin alleges that Best, "while CT Page 803 engaged in rough horseplay, intentionally struck the plaintiff's decedent." (Amended complaint, fifth count, para. 5).
After a trial on the charge of murder, Best was convicted of manslaughter in the second degree in connection with the death of Thomas. General Statutes § 53a-56 provides in pertinent part: "(a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person." (Emphasis added.) General Statutes §53a-3 (13) provides that "recklessly" has the following meaning for purposes of Title 53a: "A person acts `recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." General Statutes § 53a-3 (11) provides: "A person acts `intentionally' with respect to conduct or to a circumstance described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."
"`Recklessness is a state of consciousness with reference to the consequences of one's acts. Commonwealth v. Pierce,138 Mass. 165, 175 [1884]. . . . It is "more than negligence, more than gross negligence." Bordonaro v. Senk, 109 Conn. 428; 431, 147 A. 136 [1929].'" Dubay v. Irish, 207 Conn. 518,532, 542 A.2d 711 (1988). "`Reckless conduct is not intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result.'"Griffin v. Parker, 219 Conn. 363, 370, 593 A.2d 124 (1991), quoting State v. Beccia, 199 Conn. 1, 4, 505 A.2d 683 (1986).
"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action."Aetna Casualty Surety Co. v. Jones, 220 Conn. 285, 296,596 A.2d 414 (1991). "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . The doctrine of collateral estoppel is based on the public policy CT Page 804 that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Citations omitted; internal quotation marks omitted.) Id. Although the question of whether Best's conduct was intentional was resolved for purposes of the criminal trial, it does not follow that this issue has been conclusively established in this civil action.
"`[W]here a greater offense has been charged, conviction on a lesser offense is an acquittal on the grater.'" State v.Sawyer, 227 Conn. 566, 586, 630 A.2d 1064 (1993), quotingState v. Troynack, 174 Conn. 89, 99, 384 A.2d 326 (1977). Evidence of a judgment of acquittal in a prior criminal action may not be used in a subsequent civil case to prove that the act comprising the crime was not committed. In re Noel M.,23 Conn. App. 410, 425, 508 A.2d 996 (1990); see Griffin v.Parker, 22 Conn. App. 610, 619-20, 579 A.2d 532 (1990), rev'd on other grounds, 219 Conn. 363, 593 a. 23 124 (1991); McKennav. Whipple, 97 Conn. 695, 701, 118 A. 40 (1992). "In McKennav. Whipple, supra, the court did not allow the introduction into evidence of a judgment of acquittal in a prior criminal case to prove that the plaintiff in the subsequent civil case, the defendant in the earlier action, was not intoxicated. The issue of the subsequent civil case, was whether, by a fair preponderance of the evidence, the defendant was intoxicated. The issue in the criminal case was whether, beyond a reasonable doubt, the defendant was intoxicated. Failure to prove the latter does not preclude proof of the former."Griffin v. Parker, supra. "An acquittal in a criminal action is generally held not to have any preclusive effect, or to be admissible for the purposes of proving the truth of any facts, in a later civil proceeding involving the same issues and facts, even though the parties are the same in the later civil action . . . One reason given for this well-established rule is . . . the difference in the relative burdens of proof in the criminal and civil action." 47 Am.Jur.2d, Judgments § 736 (1995).
"To show an intentional act within the exclusion of a policy two elements are necessary: (1) the insured must have intended to commit the act and (2) to commit the injury that resulted." Allstate Insurance Co. v. Plude, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0303371 13 Conn. L. Rptr. 453, (February 1, 1995) (Saden, S.T.R.); see Markey v. Santegelo, 195 Conn. 76, 77, CT Page 805485 A.2d 1305 (1985) ("Not only the action producing the injury but the resulting injury must be intentional").
"In its most common usage, `intent' involves `(1) . . . astate of mind (2) about consequences of an act (or omission) and not about the act itself, and (3) it extends not only to having in the mind a purpose (or desire) to bring about given consequences but also to having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act.'" (Emphasis in original.) AmericanNational Fire Insurance Co. v. Schuss, 221 Conn. 768, 776,607 A.2d 418 (1992), quoting W. Prosser and W. Keeton, Torts (5th Ed. 1984), p. 34. "Also, the intentional state of mind must exist when the act occurs. . . . Thus, intentional conduct extends not only to those consequences which are desired, but also to [t]hose which the actor believes are substantially certain to follow from what the actor does. . . . Furthermore, [i]t is not essential that the precise injury which was done be the one intended. . . . Rather, it is an intent to bring about a result which will invade the interests of another in a way that the law forbids." (Citations omitted; internal quotation marks omitted.) American National Fire Insurance Co. v.Schuss, supra. "It is not necessary that the precise injury that occurred by the one intended, so long as the injury was the direct and natural consequence of the intended act." Id., 779.
"A result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue. . . . An intended or wilful injury does not necessarily involve the ill will or malevolence shown in express malice, but it is insufficient to constitute such an [intended] injury that the act . . . was the voluntary action of the person involved. . . . Both the act producing the injury and the resulting injury must be intentional. . . . The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act. . . . The known danger involved must go from being a foreseeable risk which a reasonable man would avoid and become a substantial certainty." (Citations omitted; internal quotation marks omitted.) Suarez v. Dickmont Plastics Corp., 229 Conn. 99,108-09, 639 A.2d 507 (1994).
"Intent is clearly a question of fact that is ordinarily CT Page 806 inferred from one's conduct or acts under the circumstances of the particular case. . . . Thus, whether the actor knows that the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result, is a question of fact for the jury." (Citation omitted.) Suarez v. Dickmont Plastics Corp., supra, 229 Conn. 111. "`[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.'" Id., quoting Batick v.Seymour, 186 Conn. 632, 646-47, 443 A.2d 471 (1982).
In this case, even with the court considering the excerpts of testimony and the copies of statements produced by both parties, these excerpts and statements do not establish that Best intended the consequences of his actions: the death of Thomas. Aetna has not conclusively shown that Best knew that Thomas's death was certain or substantially certain to result from Best's conduct, or that Thomas's death was the direct and natural consequence of the blows inflicted by Best. Whether the death of Thomas was an "accident" within the definition of "occurrence" or whether Thomas's death or at least bodily injury to Thomas was expected or intended by Best such that it falls within the exclusion depend on underlying questions of fact related to Best's intent. Accordingly, the court finds that because a material factual issue remains with respect to Best's intent, Aetna's motion for summary judgment should be and is denied.
Koletsky, J.