CONNECTICUT BANK AND TRUST COMPANY *v.* CARRIAGE
LANE ASSOCIATES ET AL.
(14232)

PETERS, C. J., GLASS, COVELLO, BORDEN and F. X. HENNESSY, Js.

Argued June 4—decision released July 30, 1991

*Robert P. Hanahan,* with whom was *Brian A. Barnes,* for the appellant (defendant John F. Hychko).

*James J. Tancredi,* with whom were *Rhoda L. Rudnick* and, on the brief, *Katherine A. Burroughs,* for the appellees (plaintiff and F.P., Inc.).

PETERS, C. J. The primary issue in this appeal is whether, in the absence of an express agreement or a showing of bad faith, a senior mortgagee owes a duty to a junior mortgagee to advance the proceeds of a loan to the mortgagor in accordance with the terms of the senior mortgage. The named plaintiff, Connecticut Bank and Trust Company, N.A. (CBT), initiated this action to foreclose on a mortgage that it held on real property owned by the named defendant, Carriage Lane Associates (Carriage Lane). Another defendant, John Hychko, who held a purchase money mortgage on the property, filed an answer, special defense and counterclaim against CBT. Subsequently, F.P., Inc. (F.P.), which had been substituted as party plaintiff after taking an assignment of the mortgage and note held by CBT, moved for partial summary judgment on its foreclosure complaint. CBT, which remained the defendant on Hychko's counterclaim, also moved for summary judgment thereon. The trial court, *McWeeny J.,* granted the motions in favor of F.P. and CBT. Thereafter the trial court, *Byrne, J.,* granted F.P.'s motion for strict foreclosure and rendered judgment thereon. Hychko took a timely appeal from that judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023. We affirm the judgment of the trial court.

I

The record discloses the following facts. On September 17, 1987, Carriage Lane entered into two financial arrangements. In order to finance the construction of a condominium development in Waterbury, Carriage Lane gave CBT a first mortgage in the form of a $6,500,000 commercial revolving credit mortgage note secured by an open-end mortgage and security agreement.[1] In order to finance the acquisition of the Waterbury property from its owner, John Hychko, Carriage Lane gave Hychko a second mortgage in the form of a purchase money mortgage and note securing $2,340,000. Both mortgages were recorded the following day.

Prior to the formal execution of these documents, Hychko had originally agreed with Carriage Lane that his loan would be secured by a first mortgage. When he subsequently learned, however, that CBT would only provide construction financing for Carriage Lane if CBT's mortgage had first priority, he acquiesced in that arrangement. Hychko sought, however, to have the purchase money mortgage provide: "The Seller agrees that he shall subordinate this mortgage to a 'Construction Type' mortgage to be obtained by the Buyer providing the Seller is assured that the funds obtained from the construction mortgage shall be applied to the construction of the condominium unit[s] contemplated by this agreement." Because CBT refused to finalize its financing arrangement with Carriage Lane if this language were included as part of Hychko's agreement with Carriage Lane, the language was excluded.

Faced with CBT's refusal to agree to the subordination clause, Hychko nonetheless agreed to proceed with

---

[1] The agreement complies with General Statutes §§ 49-2 and 49-3, which govern "open-end" mortgages securing future advances.

the sale of his property to Carriage Lane and to accept junior mortgagee status. He did so at least in part in reliance on the assurances of Carriage Lane's counsel that CBT's construction mortgage with Carriage Lane would specify that its proceeds would, in fact, go into the development project. The construction mortgage did provide, in relevant part, that CBT would "make the balance from time to time of the loan herein described to [Carriage Lane] in installments as the work progresses, provided the Mortgagor is not in default hereunder . . . ." The agreement also provided, however, that "the time and amount of each advancement [would] be at the sole discretion and upon the estimate of the Mortgagee . . . ." Hychko was not a party to CBT's construction mortgage with Carriage Lane.

Carriage Lane began construction of the condominium development in timely fashion. By the late summer of 1989, however, although one hundred sixty-two condominium units had been approved, only thirty-two had actually been constructed. In August and September, 1989, Carriage Lane defaulted on interest and principal payments required under its agreement with CBT. By that time, CBT had advanced approximately $5,000,000 against only $2,000,000 of actual construction.

CBT opted to declare the entire balance on the Carriage Lane note due and payable, and to foreclose its mortgage. In addition to naming Carriage Lane as a defendant in the foreclosure suit, CBT also named as defendants all junior encumbrancers on the development. Of these, only Hychko filed responsive pleadings. In his pleadings, Hychko raised a special defense that CBT had violated the terms of its agreement with Carriage Lane by advancing money to Carriage Lane in excess of the amount due in view of the amount of construction that had actually been completed at the construction site. Consequently, Hychko asserted, CBT

should be estopped from claiming any debt in excess of the amount that would have been paid out to Carriage Lane had CBT advanced money in accordance with that agreement. In a counterclaim, Hychko further alleged that he had relied upon CBT "to act in a commercially reasonable manner and to abide by the terms and conditions of its own loan documents" and, also, that in violating the terms of its agreement with Carriage Lane, CBT "knew or should have known that it would impair the security of [Hychko's] mortgage from Carriage Lane Associates."[2] CBT denied Hychko's special defense and counterclaim.

Subsequent to CBT's initiation of this litigation, CBT assigned its interest in the note, agreement and mortgage with Carriage Lane to F.P., its wholly owned subsidiary. Accordingly, CBT moved to substitute F.P. as the party plaintiff in its foreclosure action. The trial court, *Santos, J.,* granted this motion on March 26, 1990.[3]

On May 11, 1990, F.P. moved for partial summary judgment on its foreclosure complaint.[4] On that same date, CBT moved for summary judgment against Hychko on his counterclaim.[5] Both motions were filed with supporting affidavits and legal memoranda. Hychko, in turn, filed both affidavits and a memorandum of law in opposition to CBT's motion. In these and

---

[2] Hychko's special defense and counterclaim did not allege that CBT had acted in bad faith in overadvancing funds to, or had colluded with, Carriage Lane.

[3] Although F.P. is the appellee in this case, for purposes of accuracy and clarity, our opinion refers to either F.P. or CBT as circumstances dictate.

[4] F.P. moved for partial summary judgment only because it did not seek judgment as to the form of foreclosure, i.e., strict foreclosure or foreclosure by sale, or as to the value of the property or appropriate fees and expenses. It reserved these issues for a later hearing.

[5] After the substitution of F.P. for CBT in the foreclosure action, CBT remained a party to the litigation only as defendant to Hychko's counterclaim.

subsequent memoranda, Hychko reiterated his claim that CBT owed him a duty to advance loan proceeds to Carriage Lane only in accordance with the terms of CBT's agreement with Carriage Lane and that CBT had violated the terms of that agreement by overadvancing approximately $3,000,000. For the purposes of its summary judgment motion on Hychko's counterclaim, CBT conceded that it had overadvanced funds but denied the existence under Connecticut law of any duty to Hychko, absent an express agreement between the senior and junior mortgagees or collusion between the senior mortgagee and the mortgagor. Hychko then asserted in a subsequent memorandum, without any supporting affidavits, that CBT had colluded with Carriage Lane in overadvancing the loan proceeds.

On July 27, 1990, the trial court, *McWeeny, J.,* issued a memorandum of decision granting F.P.'s motion for partial summary judgment and CBT's motion for summary judgment on Hychko's counterclaim. Focusing on the counterclaim, the court ruled that, absent bad faith, collusion with Carriage Lane, or an express agreement with Hychko, CBT had no legal duty to Hychko, a stranger to its construction mortgage, to police the manner in which it advanced loan proceeds to Carriage Lane. The court noted that Hychko's pleadings did not allege any of the preconditions that might have been sufficient to impose such a duty. Although Hychko, despite the absence of an appropriate pleading, had raised the issue of collusion in his memorandum of law, the court held that the allegation was wholly unsupported and would not, therefore, raise a genuine issue of material fact capable of defeating CBT's motion. Without further discussion, the court also granted F.P.'s motion for summary judgment.

Hychko then unsuccessfully sought a further articulation of the court's decision and was denied permis-

sion to revise his counterclaim. Hychko has appealed the judgment rendered by the court on F.P.'s motion for strict foreclosure.

## II

Hychko's main argument on appeal is that the trial court improperly granted F.P.'s motion for partial summary judgment because it incorrectly concluded that CBT was under no duty to Hychko to advance funds to Carriage Lane in accordance with its agreement with Carriage Lane.[6] He contends that Connecticut imposes such a legal duty on a first mortgagee and, further, that an allegation of breach of that duty raised a question of fact, which cannot appropriately be resolved by a summary judgment. F.P. counters that the trial court correctly decided the duty issue. We agree with F.P.

## A

Before discussing the merits of Hychko's argument as a matter of state law, we first consider, as F.P. now argues for the first time on appeal, whether federal law bars Hychko's assertion of his special defense.[7] This

---

[6] Because Hychko has appealed solely from the judgment of strict foreclosure, and not from the unfavorable judgment on his counterclaim, his appeal is necessarily limited to challenging the trial court's rejection of his special defense to the foreclosure action. In its memorandum of decision, however, the trial court appears to have treated the legal theories presented in Hychko's special defense and his counterclaim as essentially identical. The record and briefs filed in this case reflect that the parties have viewed those theories in that same manner. For the purposes of this appeal, therefore, we characterize the special defense as did the parties and the trial court.

We also note that because F.P. was substituted as the plaintiff in the foreclosure action, while CBT remained in the litigation only as a party defendant to Hychko's counterclaim, F.P. is the appellee in this appeal.

[7] Because the events that give rise to this claim transpired after the trial court had rendered judgment on F.P.'s motion for summary judgment, the federal law argument could not have been presented to that court. Although we generally do not consider arguments presented for the first time on appeal, the circumstances of this case dictate a departure from that prudential rule.

argument arises out of the recent appointment of the Federal Deposit Insurance Corporation (FDIC) as receiver of CBT. This appointment followed the determination by the Comptroller of the Currency of the United States, on January 6, 1991, that CBT had become insolvent. On that date, the FDIC as receiver established The New Connecticut Bank and Trust Company, National Association (New CBT) as a bridge bank. New CBT purchased certain assets and assumed certain liabilities of the insolvent CBT, while the FDIC as receiver retained the remaining assets and liabilities. F.P., formerly a wholly owned subsidiary of CBT, was purchased by New CBT and is now a wholly owned subsidiary of that bridge bank.

As a consequence of the change in corporate structure triggered by CBT's insolvency, F.P. now argues that the provisions of 12 U.S.C.A. § 1821 (n) (4) (I)[8] and the United States Supreme Court's decision in *D'Oench, Duhme & Co.* v. *F.D.I.C.*, 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 956, reh. denied, 315 U.S. 830, 62 S. Ct. 910, 86 L. Ed. 1224 (1942), bar Hychko's assertion of his special defense. Specifically, F.P. asserts that these statutory and decisional rules of law provide it with a defense against any claim that is not based upon a written agreement to which it is a party. Relying on the absence of any such written agreement to support

---

[8] Title 12 of the United States Code Annotated, § 1821 (n) (4) (I) provides: "POWERS OF BRIDGE BANKS . . . [N]o agreement which tends to diminish or defeat the right, title or interest of a bridge bank in any asset of an insured bank in default acquired by it shall be valid against the bridge bank unless such agreement—(i) is in writing, (ii) was executed by such insured bank in default and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by such insured bank in default, (iii) was approved by the board of directors of such insured bank in default or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (iv) has been, continuously from the time of its execution, an official record of such insured bank in default."

Hychko's claim, F.P. urges us to conclude that Hychko's claim is barred as a matter of federal law.

Hychko counters, however, that federal law protects bridge banks only from secret agreements between an insolvent bank and a *borrower,* not from claims brought by innocent third parties such as himself. See *Yankee Bank for Finance & Savings* v. *Task Associates, Inc.,* 731 F. Sup. 64 (N.D.N.Y. 1990). He argues, therefore, that his special defense remains viable despite F.P.'s status as the subsidiary of a bridge bank.

We need not resolve this issue of federal law.[9] Even if we were to assume that federal law permits Hychko's assertion of his special defense, his defense must still fail if, as a matter of state law, CBT owed him no duty to monitor the manner or the amount of its disbursal of funds to Carriage Lane pursuant to the construction mortgage. We therefore turn to a discussion of the relevant state law.

## B

The trial court, in granting F.P.'s motion for partial summary judgment, rejected Hychko's special defense that CBT owed him a duty to monitor its disbursements to Carriage Lane even though he had been unsuccessful in his attempt to bargain for such protection contractually. We agree.

The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a mat-

---

[9] We also reject the proposition advanced in F.P.'s brief on appeal that, under the circumstances of this case, 12 U.S.C.A. § 1821 (d) (13) (D) deprives this court of subject matter jurisdiction to review Hychko's special defense.

ter of law." " 'Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Practice Book §§ 380, 381; *Burns* v. *Hartford Hospital,* [192 Conn. 451, 455, 472 A.2d 1257 (1984)]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 309, 407 A.2d 971 (1978).' *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984). 'The test is whether a party would be entitled to a directed verdict on the same facts.' *Batick* v. *Seymour,* 186 Conn. 632, 647, 443 A.2d 471 (1982)." *Connell* v. *Colwell,* 214 Conn. 242, 246–47, 571 A.2d 116 (1990).

At the outset, we note two fundamental flaws in Hychko's special defense. First, the language in CBT's agreement with Carriage Lane linking advances to actual construction was adopted for CBT's own benefit. Second, additional language in the agreement expressly provided that the time and amount of each advancement would be within the *sole discretion* of CBT. No reasonable construction of this language would permit a junior lienor, such as Hychko, to infer that CBT had made a contractual commitment to advance funds to Carriage Lane only as construction progressed.

More fundamentally, however, F.P. maintains, as it did in the trial court, that even if CBT could be said to have violated the terms of the construction mortgage by overadvancing funds to Carriage Lane, such

a default would not have constituted a breach of duty to Hychko. The trial court granted partial summary judgment on the basis of that argument.

In support of its argument that it had no duty to Hychko, F.P. relies on *First Connecticut Small Business Investment Co.* v. *Arba, Inc.,* 170 Conn. 168, 365 A.2d 100 (1976). In that case, the defendant held a purchase money mortgage on land that he had sold to Arba, Inc. That mortgage contained a clause subordinating it to another mortgage that First Connecticut, an institutional lender, had also placed on the land to secure money it had loaned to Arba, Inc., to develop the property as a mobile home park. When Arba, Inc., defaulted on the loan, the trial court granted First Connecticut's request for strict foreclosure. In granting that request, the trial court held, inter alia, that First Connecticut was under no duty to see that the funds loaned to Arba, Inc., were actually used to develop a mobile home park. On appeal, this court affirmed, holding that "[i]n the absence of . . . collusion, or an express agreement, [a senior mortgagee] is under no obligation to see that moneys it advances are employed by the borrower in the manner contemplated by the subordinated purchase money mortgagee." Id., 177.

Cases in other jurisdictions have come to the same conclusion. For example, in *National Bank of Washington* v. *Equity Investors,* 81 Wash. 2d 886, 920, 506 P.2d 20 (1973), the court stated that "[o]utside the contract, the major duty which a construction lender owes to any other party is the duty of good faith; though a loan may be inefficiently managed and with adverse consequences, neither inferior lienors nor absolute guarantors have any recourse against the lender unless it is alleged and proved that the lender acted in bad faith." See also *Rockhill* v. *United States,* 288 Md. 237, 418 A.2d 197 (1980), and cases cited therein; *Brooklyn*

*Trust Co.* v. *Fairfield Gardens, Inc.,* 260 N.Y. 16, 182 N.E. 231 (1932). The rationale for refusing to impose on a first mortgagee a duty, other than one of good faith, in the absence of an express agreement, "is that it is within the power of the subordinator to refuse to subordinate if the terms of the subordination are not acceptable to him. . . . To find the existence of a legal duty where none is expressed in the contract has much the same effect as judicially rewriting the contract for the parties." *Rockhill* v. *United States,* supra, 252.

If an institutional lender owes only a duty of good faith to a subordinated purchase money mortgagee, no greater duty can logically be imposed in the present case in which Hychko, as purchase money mortgagee, voluntarily assumes junior mortgagee status after unsuccessfully bargaining for a subordination agreement. We conclude, therefore, that the only duty that CBT owed Hychko was one of good faith.

Hychko argues, however, that he raised factual issues of collusion and fraud, which are tantamount to allegations of lack of good faith, and that summary judgment was therefore inappropriate. We disagree. The pleadings contain no such allegations. Similarly, allegations in Hychko's affidavit that James Griffin, a former employee of CBT who had participated in making the loan to Carriage Lane, subsequently left CBT to work for Carriage Lane, that materials from the Waterbury project site were used elsewhere, including building a chalet for Griffin and another Carriage Lane principal, or that CBT's bank inspector failed to make construction progress inspections, even when viewed in a light most favorable to Hychko, cannot be construed as alleging collusion or bad faith on CBT's part. The only express allegation of collusion, then, is the one that appears in a memorandum of law in opposition to F.P.'s motion for partial summary judgment.

This bald assertion, without more, is insufficient to raise a genuine issue of material fact capable of defeating summary judgment and the trial court properly rejected it.[10]

Hychko's final contention is that this case is governed not by *First Connecticut Small Business Investment Co.* but by a line of cases in which senior mortgagees intending to secure future advances were held to have undertaken certain duties to junior mortgagees. See *Sadd v. Heim,* 143 Conn. 582, 124 A.2d 522 (1956); *Matz v. Arick,* 76 Conn. 388, 56 A. 630 (1904).

These cases are, however, inapposite, because they concern the form of mortgages securing future advances, and not the performance obligations that such mortgages entail.

As a matter of form, the validity of future advance mortgages at common law depended on whether they provided a subsequent individual purchaser, incumbrancer or creditor with "reasonable notice of the

[10] In addition to his collusion claim, Hychko also asserts that he had put into issue the mortgage debt on which F.P. sought to foreclose by asserting that the debt was substantially less than that claimed by F.P. According to Hychko, the amount of the mortgage debt claimed by F.P. should have been reduced by the amount of money overadvanced to Carriage Lane because the overadvancement represented the breach of a duty that the plaintiff owed him. This is a legal argument and, as such, was appropriately decided on F.P.'s motion for partial summary judgment.

Hychko also generally attacks the trial court's decision to grant F.P.'s motion for partial summary judgment by arguing that F.P. failed to follow the summary judgment procedures set forth in Practice Book § 378 et seq. In particular, he alleges that the grounds on which F.P. was seeking partial summary judgment were unclear and, therefore, that summary judgment should not have been granted. We are unpersuaded.

Our review of the record discloses that F.P.'s motion was filed with supporting affidavits and a memorandum of law, all in conformance with relevant practice book requirements. Although the grounds on which F.P. sought summary judgment were initially somewhat unclear, subsequent memoranda crystallized those grounds so that the precise nature of the motion was before the trial court when it ruled thereon.

nature and amount of the incumbrance which the mortgagor intends to place upon the land." *Sadd* v. *Heim,* supra, 585. Where such notice was lacking, such individuals could challenge the priority of the debt of which the future advance mortgage failed to give reasonable notice. In the instant case, however, F.P.'s mortgage complied with General Statutes §§ 49-2 and 49-3. These sections codify the requirements for open-end mortgages securing future advances. Mortgages executed in conformance with these sections are afforded a "safe harbor" that protects them from the type of challenges at issue in *Sadd* v. *Heim,* and *Matz* v. *Arick. Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 572–74, 522 A.2d 763 (1987).

Hychko concedes that the CBT construction mortgage with Carriage Lane complied fully with the relevant statutory sections. He nonetheless contends that F.P.'s failure to perform in accordance with the terms of that mortgage constituted a breach of a common law duty that F.P. owed him. Hychko relies heavily upon *Stein* v. *Davidson,* 110 Conn. 4, 147 A. 1 (1929), for support of this proposition.

In *Stein,* which was decided before the legislature enacted §§ 49-2 and 49-3, the defendant had purchased property subject to a first mortgage at a foreclosure sale. Although the first mortgage explicitly provided that money would be advanced only at specific stages of construction, funds were nonetheless advanced even though the predicate construction had not been completed. When the first mortgagee subsequently sought to foreclose on the property, the defendant challenged the validity of the debt that had been incurred in contravention of the terms of the first mortgage. This court upheld the defendant's challenge. The court based its decision, however, on the same concern manifested in *Matz* and *Sadd,* namely that "a

mortgage to secure future advances [display] such reasonable certainty as will enable subsequent purchasers, incumbrancers or creditors to ascertain by its terms or such reasonable inquiry as is suggested by them the amount actually secured by it." *Stein* v. *Davidson,* supra, 11.

The purpose of the "reasonable certainty" requirement was not, however, the protection of the reliance interest of junior incumbrancers but the protection of the integrity of the recording system, which, "in its spirit, requires that the record should disclose, with as much certainty as the nature of the case will admit of, the real state of the incumbrance upon the property." Id., 11–12. That requirement is satisfied when a mortgage securing future advances complies with § 49-3. Notably, § 49-3 expressly permits the mortgagee to make advances at its sole and absolute discretion, provided that the face amount of the note secured by the mortgage is not exceeded.[11] Because F.P.'s mortgage agreement with Carriage Lane complied with § 49-3, Hychko's reliance on *Stein* is unavailing.

We conclude, therefore, that the trial court properly granted F.P.'s motion for partial summary judgment.

[11] General Statutes § 49-3 provides in relevant part: "(a) Any mortgage to secure future advancements of money for construction or repair of buildings or improvements on land in this state, including site improvements of every kind with or without the construction or repair of any buildings, is sufficiently definite and certain and valid to secure all money actually advanced under and in accordance with its provisions, *up to but not exceeding the amount of the full loan therein authorized,* with the same priority as if it had been advanced at the time the mortgage was delivered, (1) if the mortgage contains a description of the loan in substantially the following form: 'Whereas buildings or improvements on said premises are in process of construction or repair, or to be erected or repaired; and whereas the said grantee has agreed to make the loan herein described to be paid over to said grantor in instalments as the work progresses, *the time and amount of each advancement to be at the sole discretion and upon the estimate of said grantee . . . .' "* (Emphasis added.)

For all of the reasons advanced above, Hychko's special defense must fail.[12]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[12] Hychko also cites a number of other cases in support of his special defense. See *Fidelity Trust Co.* v. *Irick,* 206 Conn. 484, 538 A.2d 1027 (1988); *Beach* v. *Isacs,* 105 Conn. 169, 134 A. 787 (1926); *Essex Savings Bank* v. *Leeker,* 2 Conn. App. 98, 476 A.2d 1071 (1984). We have reviewed these cases and find none of them on point.