[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST HAROLD P. LEE
The plaintiff, Heritage Bank, has moved for summary judgment against its debtor, Southbury Lighting Company, Inc., and Richard E. Fonte, Daniel M. Erhard, Richard A. Matza and Harold P. Lee, individuals who guaranteed the debtor's payment of a note and money loaned pursuant to a commercial line of credit agreement. The defendant, Harold P. Lee, has interposed certain defenses upon which the court must rule in its determination of whether a summary judgment should be entered as to him.
 I.
The facts on which the plaintiff relies are supported by documentary evidence and may be regarded as undisputed. On March 29, 1989, the plaintiff in writing committed itself to loan $150,000.00 to Southbury Lighting Company, Inc. upon receipt of Southbury Lighting's promissory note. On the same day, the plaintiff also committed itself in writing to enter into a commercial line of credit agreement with Southbury Lighting Company whereby up to $100,000.00 could be borrowed. Each written commitment contained the following language: "2. Guarantor: The loan shall be guaranteed by Richard Fonte, Harold P. Lee, Daniel M. Erhard and Richard A. Matza jointly and severally." Further, the written commitment relating to the promissory note stated: "12. Guarantee: payment of the Commercial Note including principal and interest, costs, expenses and reasonable attorneys fees after default, or incurred in sustaining priority with respect to collateral and performance of all of Borrowers obligations under the Loan Documents (as hereinafter defined) shall be unconditionally, jointly and severally and irrevocably guaranteed by the following guarantors: 1. Richard Fonte 2. Harold P. Lee 3. Daniel M. Erhard 4. Richard A. Matza." Paragraph 12 of the written commitment relating to the commercial CT Page 4973 line of credit contains identical language except that the words "Commercial Line of Credit" appear in place of the words "Commercial Note." Paragraph 15 of each written commitment sets forth what corporate documents will be required. Among the documents was to be a corporate resolution authorizing each loan and execution of of all loan documents. On March 30, 1989, Southbury Lighting Company, Inc., by Daniel M. Ehrhard, its president, and the four individual guarantors accepted, acknowledged and signed both written commitments.
March 30, 1989 was the closing date for the two loans. On that day, a corporate resolution stating that Erhard, Fonte, Lee or Matza are authorized to borrow monies from the plaintiff on behalf of Southbury Lighting Company, Inc. was delivered. The resolution was signed by the four guarantors as officers and directors of the corporation. The resolution was certified by the defendant, Harold P. Lee, as corporate secretary.
Also on March 30, 1989, the defendant, Harold P. Lee, as well as the three other directors, executed two separate written guaranties, one covering the $150,000.00 promissory note, and one covering the $100,000.00 line of credit. In paragraph 1 of each guaranty, Lee, as guarantor, "unconditionally and absolutely guaranteed payment of the indebtedness, including interest, court costs, attorney's fees, etc." Paragraph 4 of each guaranty states that the obligations of Lee, as guarantor, are independent of the obligations of Southbury Lighting Company, Inc., and that a separate action or actions may be brought against Lee, whether or not an action is brought against Southbury Lighting Company, Inc. In paragraph 5 of each guaranty, Lee waived any right he might have to require the plaintiff to proceed against Southbury Lighting Company, Inc. to recover on any indebtedness or to proceed against or exhaust any security held from Southbury Lighting Company, Inc. Paragraph 8 of each guaranty provides that the plaintiff may enforce the guaranty without first resorting to or exhausting any other security or collateral or without first having recourse to the personal liability or assets of Southbury Lighting Company, Inc., or any other party liable for the indebtedness.
On March 30, 1989, Southbury Lighting Company, Inc. executed the promissory note for $150,000.00, and the Commercial Credit Line Agreement for $100,000.00. Both the note and the credit agreement were signed by Daniel Erhard, as president of Southbury Lighting Company, Inc. Neither the note nor the credit agreement was signed by Lee or the other guarantors. The loan evidenced by the note was assigned number 10380 on the plaintiff's books, and the loan represented by the credit line agreement was assigned number 10390. CT Page 4974
By June 19, 1991, both loans were in default. Pursuant to provisions in the note and credit line agreement, the plaintiff declared their respective unpaid balances due and payable. Identical letters of demand were sent to each guarantor. In the letter sent to Lee, he was asked to pay $87,500.00 principal, plus $1,112.50 interest, which was accruing at the per diem rate of $21.87 on loan No. 10380, and $97,500.00 principal, plus $2,799.05 interest which was accruing at the per diem rate of $24.37 on loan No. 10390. In the letter, Lee was also informed that a failure to pay within ten days would mean additional expenses, including an attorney's fee.
In opposition to the plaintiff's claims, the defendant, Harold P. Lee, has asserted three defenses. First, he contends that since he signed separate guaranties and not the note or credit line agreement, he is only secondarily liable, if at all, for the two debts. Second is the contention that because his property has been attached through a prejudgment remedy, he has a right to an equitable marshaling of the assets of Southbury Lighting Company, Inc. The third contention is that corporate resolution is at variance with the "Organization Agreement re Formation of Southbury Lighting Company, Inc.", raising an issue of fact as to whether the corporation was authorized to borrow the money and whether Daniel Erhard was properly authorized to sign as president on the note and in the commercial credit line agreement.
 II. A.
Pursuant to Practice Book 384, a summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. The party seeking a summary judgment has the burden to establish the nonexistence of any material fact. Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 781 (1991). A material fact is a fact that will make a difference in the result of the case. Cummings Lockwood v. Gray, 26 Conn. App. 293, 297 (1992). Once the movant has filed the appropriate documents, the opposing party "must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Strada v. Connecticut Newspapers, Inc.,193 Conn. 313, 317 (1984). The mere presence of an alleged adverse claim is not sufficient to defeat the motion. Rather, the opponent must recite specific facts which contradict those contained in the movant's affidavits and documents. Bassin v. Stamford, 26 Conn. App. 534, 537 (1992). In deciding a motion for summary judgment, the court must view the evidence most favorably CT Page 4975 to the opponent. Connecticut Bank Trust Co. v. Carriage Lane Associates, supra. "The test is whether a party would be entitled to a directed verdict on the same facts." Batick v. Seymour,186 Conn. 632, 647 1982); Connell v. Colwell, 214 Conn. 242, 247
(1990).
 B.
A contract of guaranty is an agreement that is separate and distinct from the contract between lender and borrower. Alling Paper Co. v. Massinin, 31 Conn. Sup. 154, 156 (1977). "A guaranty is a promise to be surety for the performance of a contractual obligation made to the obligee and is binding if (a) the promise is in writing and signed by the promisor and recites a purported consideration; or (b) the promise is made binding by statute; or (c) the promissor should reasonably expect the promise to induce action or forbearance of a substantial character or the part of the promisee or a third person, and the promise does induce such action or forbearance." Superior Wire Paper Products Ltd. v. Talcott Tool Mach., Inc., 184 Conn. 10, 20 n. 8 (1981).
The documents submitted establish that the obligations of Henry P. Lee and the other guarantors were guaranties of the type (a) above, and that they were absolute in their terms. "An absolute guaranty is an unconditional undertaking on the part of the guarantor that the maker will pay the note." Beardsley v. Hawes, 71 Conn. 39, 42 (1898). When a guaranty is absolute, no steps are required to enforce the debt against the principal before proceeding against the guarantor. Barnes Co. v. Zacks,117 Conn. 285, 288 (1933). The guarantor becomes liable to pay the debt without demand on the debtor or notice of default. Savings Bank of New Britain v. Weed, 121 Conn. 414, 422 (1936). The court finds Lee's reference to General Statutes 42a-3-41G to be confusing and erroneous. That section identifies different "key words" which, if used, signify either a guaranty of payment meaning primary liability or guaranty of collection meaning secondary liability. But subsection (3) of 42a-3-416 specifies that "words of guarantee which do not otherwise specify guarantee payment." Further, in paragraph 1 of both guaranties, Harold P. Lee "unconditionally and absolutely guarantees . . . payment. . ." This statement alone imposes primary liability on the guarantor. Chemical Bank v. Ciszewska, 40 Conn. Suup. 236, 237 (1985).
Nor are bonafide questions of fact raised by Lee's contention that he is entitled to an equitable marshaling of the assets of Southbury Lighting Company, Inc. "Marshaling is a right to enforce a certain order of realization out of security." Hartford National Bank Trust Co. v. Kotkin, 185 Conn. 579, 581 (1981). CT Page 4976
Hartford National Bank Trust Co. v. Kotkin presented a situation that is dissimilar to the instant case. There, the defendants had signed notes and mortgaged property as security for those notes. When the plaintiff's elected to sue on the notes and not foreclose the property, the defendants requested marshaling on the allegation that irreparable harm would occur to persons with interests in the property securing the debt. 185 Conn. at 580. Here, by contrast, no security was pledged by Lee or the other guarantors. Thus, there can be no "order of realization out of security as was theoretically possible in Hartford National Bank 
Trust Co. v. Kotkin. The attachment of Lee's property does not provide a basis for marshaling. In effect, Lee's attached property stands as security for a judgment contemplated by this action but the property was not given as security for the debts of Southbury Lighting Company, Inc., the payment of which Lee guaranteed.
Moreover, there is another reason why the argument for marshaling is inappropriate. In paragraph 5 of both guaranties, Lee waived any right he may have had to require the plaintiff to proceed against or to exhaust any security of Southbury Lighting Company, Inc. held by the plaintiff. Clear and definitive contract language can establish waiver as a matter of law. Connecticut National Bank v. Douglas, 221 Conn. 530, 545 (1992); Pero Building Co. v. Smith, 6 Conn. App. 180, 184 (1986). A similar waiver by a guarantor of rights in the collateral of a debtor held by a secured creditor has been upheld. Connecticut National Bank v. Douglas, supra at 547.
Lee's final argument concerns discrepancies between the corporate resolution that he, as secretary of Southbury Lighting Company, Inc., certified to the plaintiff and the organization agreement of the corporation. In brief, the organization agreement shows that Lee owns 10% of the stock of Southbury Lighting Company, Inc. Paragraph 8 of the organization agreement provides that all capital contributed to the corporation and all loans from stockholders to the corporation shall be on a pro rata basis except as the stockholders shall otherwise agree. For loans made to the corporation by lending institutions for which all stockholders co-sign or guarantee, paragraph 8 imposed liability in the same ratio as their respective ownership of the corporation. Finally, paragraph 8 states that "as between the stockholders each shall be severally liable for each debt with the right of indemnification for the person who "becomes undirectly liable" or "pays a portion of any such liability in excess of his share." The corporate resolution recites that any one of the four directors is authorized to borrow on behalf of Southbury Lighting Company, Inc., money from the plaintiff.
There is, of course, a short answer to Lee's final CT Page 4977 contention. General Statutes 33-313 (b) provides "No limitation upon the authority which the board of directors would have in the absence of such limitation shall be effective against persons without actual knowledge of such limitation, other than shareholders or directors." Lee has made no claim that agents of the plaintiff had actual knowledge of whatever limitations on the general authority of the directors of Southbury Lighting Company, Inc. may have been imposed by the organization agreement.
 III.
The court concludes that no genuine issue of material fact exists and that the plaintiff is entitled to judgment as a matter of law on both guaranties against Harold P. Lee. Practice Book 384. The plaintiff is directed to file an affidavit computing the principal sums, interest and costs to date, as well as an affidavit concerning the amount requested for an attorney's fee. Harold P. Lee shall have an opportunity to contest the plaintiff's computations, and the amount requested for an attorney's fee.
BARNETT, J.