[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
On March 1, 1988, a promissory note in the amount of $141,750 was entered into between the defendants, Christian Timoney, Carole Timoney, Dennis Angelillo and Marsha Angelillo, as makers, and the plaintiff, Segundo P. Vigil, as promisee/creditor. The note was secured by a mortgage on 57-59 Evergreen Avenue, Hartford, Connecticut.
On August 18, 1988, the defendants transferred the mortgaged real property to a third-party purchaser, William Wechsler. Wechsler agreed to assume the note and mortgage as part of the transaction. At the time of the transaction, the plaintiff agreed to subordinate the note and mortgage to a new mortgage executed by Wechsler in the principal sum of $400,000. At the closing the defendants received $76,313.86 as proceeds of the sale to Wechsler. (Plaintiff's Motion for Summary Judgment, Exhibit I, Seller's statement).
In the present action, the plaintiff, claiming default, has brought suit against the defendants on the original note for $141,750. The defendants have acknowledged the existence of the note and its terms, but have raised special defenses that the plaintiff is estopped from collecting the debt. Grounds for the defendants' special defenses include: (1) that the defendants were sureties on the note and the plaintiff took actions to impair the equity position and subrogation rights of the defendants by subordinating the original mortgage without their consent, thereby discharging their liability; (2) CT Page 85 that the plaintiff's delay in proceeding against Wechsler to collect the debt constituted a modification of the obligation without consent of the defendants, thereby discharging their liability; and (3) that the plaintiff's failure to first proceed against the real property secured by the note discharges the defendants from liability.
The plaintiff filed a motion for summary judgment on September 3, 1993, seeking payment on the $141,750 promissory note signed by the defendants. Accompanying his Motion, the plaintiff filed a supporting memorandum and several exhibits, including an affidavit by the plaintiff, the original note, and the subordination agreement between the plaintiff and Weschler, the third-party purchaser. The subordination agreement was not signed by the defendants.
The defendants filed a memorandum in opposition to plaintiff's Motion for Summary Judgment, dated October 13, 1993, accompanied by an affidavit declaring that they did not execute, nor were they aware of, the subordinate agreement between the plaintiff and Weschler.
Summary judgment is a proper way to resolve litigation where "`the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 316-17. 477 A.2d 1005
(1984), quoting Practice Book 384. The function of the trial court in deciding a motion for summary judgment is to determine whether an issue of fact exists, but not to decide that issue if it does exist. Town Bank Trust Co. v. Benson, 176 Conn. 304, 306-07, 407 A.2d 971 (1978); Michaud v. Gurney, 168 Conn. 431, 433, 362 A.2d 857 (1975). The burden of proof is upon the moving party to show the nonexistence of any genuine issue of material fact; Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 781, 595 A.2d 334 (1991); Town Bank Trust Co. v. Benson, supra, 307 (describing standard as "strict"); and "the trial court must view the evidence in the light most favorable to the nonmoving party." Strada v. Connecticut Newspapers, Inc., supra, 317. Summary judgment is proper only in limited instances where the evidence presented on the motion is such as to require a directed verdict for the moving party. Yanow v. Teal CT Page 86 Industries, Inc., 178 Conn. 262, 268-69, 422 A.2d 311
(1979).
Under Connecticut law, where a mortgage is assumed by a grantee, the grantee becomes the principal debtor and the original mortgagor/grantor remains a surety to the debt with a right of recourse against the grantee if compelled to pay the debt. Santoro v. Kleinberger, 115 Conn. 631,634, 163 A. 107 (1932); Cacavalle v. Lombardi, 106 Conn. 339,342, 138 A. 155 (1927). The defendants argue that this "right of recourse" against the grantee has been impaired without their consent by the subordination agreement, thus discharging them from liability under the note.
In the commercial setting, a holder of an instrument may discharge the obligor or some other party if the holder unjustifiably impairs the collateral that secures the debt. See General Statutes 42a-3-605 (formerly General Statutes42a-3-606). As a general rule, the discharge operates only to the extent the creditor has actually impaired a party's right of recourse. Id.; see J. White R. Summers, Uniform Commercial Code, 13-15, 664 (3d. ed. 1988). A party is not discharged if he consents to the event or conduct that is the basis of the discharge. See General Statutes 42-a-3-605(i).
There is no genuine issue of material fact as to whether the subordination agreement was consented to by the defendants. The plaintiff, in his memorandum in support of his Motion for Summary Judgment, states: "the Defendants sold the property and with the consent [of] the Defendants involved, subordinated this Note to the new buyer's first mortgage." (Plaintiff's Memorandum in Support of Motion for Summary Judgment, 4). Although the plaintiff's affidavit does not address the issue of whether the defendants consented to the subordination, it does state: "At no time were the original Makers of the Note dated March 1, 1988, (Exhibit C) released, discharged or in any way relieved of their obligations under the Note." (Plaintiff's Aff. 11).
The defendants, however, state in an affidavit submitted in opposition to the plaintiff's Motion for Summary Judgment: "We did not execute, nor were we aware CT Page 87 of, the subordination agreement executed between the plaintiff and the said William Weschler, wherein a $400,000.00 mortgage was to be placed ahead of plaintiff's mortgage, upon which we remained liable." (Defendants' Aff. 6). Accordingly, a genuine issue of material fact exists as to whether the defendants consented to the subordination agreement.
In addition, there is a genuine issue of material fact as to the extent of the alleged impairment caused by the subordination of the note and mortgage. As previously stated, the discharge, if any, operates only to the extent the creditor has impaired a party's right of recourse. See General Statutes 42a-3-605; J. White R. Summers, supra.
An analogous case is Fleet Bank, N.A. v. Polites, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 387118 (April 1, 1992). In that case the court was called upon to decide whether or not to strike a special defense raised by an accommodation party to a note claiming discharge from liability on the note due to the holder's releasing of two of the five primary parties from liability on the note. The defendant there argued, as the defendant here has argued, that such a release impaired his right of recourse against all of the primary parties in the event they were held liable. In denying the defendant's motion to strike this defense, the court stated: "Connecticut General Statutes, 42a-3-606 provides that the holder discharges a party to the extent that the collateral against which any person has a right of recourse has been unjustifiably impaired. The question of whether or not the surety has been impaired is a factual issue raised by [the defendant's] fourth special defense." Id. Although the facts of Polites are distinguishable from those of the instant case, its logic is directly applicable to the issue here presented. The extent of impairment, if any, is a factual issue which the finder of fact must decide.
In light of the above analysis the plaintiff's Motion for Summary Judgment is therefore denied.
Michael R. Sheldon, J. CT Page 88