[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed October 1, 1997
This is an action for damages sustained in the removal and transportation of two barrels of waste oil from the property of the named defendant, who has filed an amended third-party complaint against the executors of the prior owner of the CT Page 9979 property, Harold C. Gehrke, Sr. and Albert M. Gehrke, in his individual capacity, as well as H.R.P. Associates, Inc., the environmental consulting company that had performed an environmental assessment on the property before the purchase. Counts one through four of the amended third-party complaint assert causes of action against the Gehrkes sounding in, respectively, strict liability pursuant to General Statutes §22a-134b; liability for cleanup costs pursuant to General Statutes § 22a-452; indemnification pursuant to General Statutes § 22a-134b; and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 142-110a et seq. The Gehrkes now move for summary judgment as to counts one, three and four of the third party plaintiff's amended complaint.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book § 384 Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994); Telesco v. Telesco, 187 Conn. 715,447 A.2d 752 (1982); Yanow v. Teal Industries, Inc., 178 Conn. 262,422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431,362 A.2d 857 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 273 A.2d 716 (1970);Dorazio v. M.B. Foster Electronic Co., 157 Conn. 226, 253 A.2d 22
(1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1980).
Once the moving party has submitted evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Bartha v. Waterbury House Wrecking Co., 190 Conn. 8,11-12; Farrell v. Farrell, 182 Conn. 34, 38 (1980); RuscoIndustries, Inc. v. Hartford Housing Authority, 168 Conn. 1, 5
(1975). It is not enough for the opposing party merely to assert CT Page 9980 the existence of such a disputed issue. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380." Bartha v.Waterbury House Wrecking Co., supra, 190 Conn. at 12. "The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." Kasowitzv. Mutual Construction Co., 154 Conn. 607, 613 (1967), quotingBoyce v. Merchants Fire Ins. Co., 204 F. Sup. 311, 314 (D.Conn. 1962); Burns v. Hartford Hospital, 192 Conn. 451, 455 (1984).
The party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256,106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 217 (1986), cited in Salomon v.Krusiewicz, 14 CLT 456 p. 31, 3 CSCR 84a (Super.Ct., New Britain, 10/6/88).
It should be noted that the first, third and fourth counts of the complaints were also the subjects of an earlier motion to strike which was virtually identical to the present motion for summary judgment. That motion to strike was denied by the court, Fracasse, J., on April 7, 1997. The only additional material appears to be the affidavit of Albert Gehrke which states, in pertinent part, that the waste oil found on the property, containing PCBs and hazardous waste, were unknown to the Gehrkes prior to their having conveyed the property to Ravenswood and were of "unknown origin." Based on this statement, the Gehrkes claim that the third-party plaintiff cannot prove, as a matter of law, that the hazardous waste was generated "by another or by a municipality", as required by the statute. In addition, the affidavit states that the Gehrkes were not in the business of storing or otherwise dealing with hazardous waste, and that the Hazardous Waste Transfer Act, General Statutes § 22a-134 et seq., was only intended to apply to entities in the business of dealing with hazardous waste.
The short answer to all of the Gehrkes' arguments is that they were raised in connection with a motion to strike, although unaccompanied by affidavits at the time, and that they have been decided adversely to the Gehrkes. Because the court, Fracasse, J., did not issue a memorandum of decision, however, and because the affidavit was not a part of the record in connection with the CT Page 9981 motion to strike, some brief additional commentary is warranted.
The Gehrkes offer no support for their conclusion that the Hazardous Waste Transfer Act was intended to apply to those in the "business" of storing, handling, etc. hazardous waste. Certainly, if that had been the legislature's intent, it could easily have so specified in the original legislation or in any of the amendments which have followed. Moreover, such an intent is belied by the overriding purpose of the legislation, which to protect the environment and the people of the State of Connecticut.
"The General Assembly finds that the growing population and expanding economy of the state have had a profound impact on the life-sustaining natural environment. The air, water, land and other natural resources, taken for granted since the settlement of the state, are now recognized as finite and precious. It is now understood that human activity must be guided by and in harmony with the system of relationships among the elements of nature. Therefore the General Assembly hereby declares that the policy of the state of Connecticut is to conserve, improve and protect its natural resources and environment and to control air, land and water pollution in order to enhance the health, safety and welfare of the people of the state. It shall further be the policy of the state to improve and coordinate the environmental plans, functions, powers and programs of the state, in cooperation with the federal government, regions, local governments, other public and private organizations and concerned individuals, and to manage the basic resources of air, land and water to the end that the state may fulfill its responsibility as trustee of the environment for the present and future generations." General Statutes § 22a-1.
"It is hereby found and declared that there is a public trust in the air, water and other natural resources of the state of Connecticut and that each person is entitled to the protection, preservation and enhancement of the same. It is further found and declared that it is in the public interest to provide all persons with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." General Statutes § 22a-15.
From these statements of policy and the language of the Transfer Act, it may be inferred that the remedial purpose of the Act is to identify sites of hazardous waste generation, disposal CT Page 9982 or storage; report them to the Commissioner of the Department of Environmental Protection and putative buyers/transferees; and, if necessary, identify a legally responsible party to mitigate or remove any contamination. "Environmental statutes, considered remedial in nature, are to be construed liberally to reach the desired result." (Citations omitted.) Kenney v. Old Saybrook,237 Conn. 135, 157, 676 A.2d 795 (1996).
"Where public interest is affected, an interpretation is preferred which favors the public. A narrow construction should not be permitted to undermine public policy sought to be served. This is especially so where the narrow construction discourages rather than encourages the specific action the legislature has sought to foster and promulgate." J. Sutherland, Statutory Construction, § 56.01 (4th Ed. Sands). Given this history and purpose, there is no reason to conclude that the Transfer Act targeted only those in the business of storing hazardous waste. The threat to the environment and to the people of the state does not depend on whether one is storing such wastes for business reasons or for some other purpose.
Albert Gehrke's affidavit to the effect that the wastes found on the property were "of unknown origin" does not satisfy the Gehrke's burden of establishing that there are no genuine issues of fact regarding whether the waste in question was generated "by another or by a municipality." The statement that Albert Gehrke does not know the origin of the material does not require a counter-affidavit, because that statement does not tend to disprove a fact which the third-party plaintiff must prove in order to prevail. It merely states that Gehrke does not know the material's source.
Because the Transfer Act is not limited to those in the business of storing hazardous waste, and because there are facts in dispute with regard to the source of the hazardous waste stored on the property, the Gehrkes are not entitled to judgment as a matter of law. The motion for summary judgment is therefore denied.
SILBERT, J.