[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
In this action the defendant, Southern New England Telephone Co. ("SNET"), has moved for summary judgment on the complaint of the plaintiff, Richard Schietinger, and the plaintiff has moved for summary judgment as to liability only against the defendant.
Statement of Facts
This lawsuit stems from an incident on July 2, 1992, in which the plaintiff was severely injured while performing his job for his employer, SNET. At that time, SNET was replacing underground oil tanks on its property at 555 Main Street in Stamford, Connecticut. Part of that construction included excavation of its parking lot. Also located on the SNET property at 555 Main Street was an electrical substation owned and operated by The Connecticut Light Power Company (CLP).
SNET entered into a contract with C/P Utility Services Company, CT Page 1805 Inc.(CPU) on May 15, 1992 to oversee the replacement of the tanks. In that contract, CPU agreed to furnish professional engineering and safety oversight. Paragraph 16(a) provided that SNET would "indemnify and hold [CPU] harmless, including the cost of defense, from any claim brought by third parties if such claim would arise out of the execution of the contract. . ." SNET hired Environmental Construction Services, Inc. (ECS) to do the actual work of replacing the underground tanks.
On July 2, 1992, an employee of ECS struck an unmarked underground conduit with an excavator, thereby exposing high-power electrical lines owned by CLP that ran from the CLP substation on SNET's property to the street. CLP and SNET officials were notified and CLP technicians supposedly stopped the flow of power through the exposed wires. The technicians, however, were mistaken in their belief that the lines were now dormant, and high-voltage electricity continued to pass through the cables.
On the evening of July 2, 1992, after the CLP technicians and the CPU and ECS employees working on the site had left, the plaintiff was directed to the 555 Main Street property to investigate the still-exposed wires. While in the scope of his employment, the plaintiff was injured by an exposed power cable.
The plaintiff brought a personal injury action against CLP, CPU, and ECS for negligence (hereinafter "original lawsuit") entitled Schietingerv. The Connecticut Light and Power Company, et al., Superior Court, Judicial District of Fairfield at Bridgeport, Civil Docket Number CV-93-0305621S. The plaintiffs Second Amended Complaint from the original lawsuit, dated April 30, 1998, alleged that the plaintiff was an SNET employee on the date of the accident. The plaintiff also received workers' compensation benefits from the defendant and the defendant intervened into the plaintiffs third-party tortfeasor lawsuit to protect its workers' compensation lien.
During the pendency of the plaintiffs original lawsuit, CPU and ECS entered into agreements with CLP to shield themselves from further liability. CPU's vice president signed a release on April 15, 1996, agreeing to pay CLP $37,000 in return for which CLP agreed to release CPU from any claims CLP may have against them arising from the accident in which the plaintiff was injured. CLP also agreed to fully defend, indemnify and hold harmless CPU from and against any and all claims, actions, causes of action, liens, settlements, verdicts or judgments of any kind whatsoever, including but not limited to, direct actions, apportionment, indemnification, contribution, subrogation or reimbursement, which have or may be brought, entered, entered into, or rendered against CPU arising out of the incident that caused Mr. CT Page 1806 Schietinger to be injured, the lawsuit brought by Mr. Schietinger against CLP, CPU and ECS, or any separate lawsuit brought against CPU by any person(s), business(es) or organization(s), arising out of the aforesaid Incident or Lawsuit. The agreement also provides that CLP would have full control over the defense of the plaintiffs original lawsuit, including selection of counsel, pleadings, trial strategy, and appeal.
On December 9, 1998, CLP, CPU, and ECS settled the original lawsuit brought by the plaintiff. Their agreement was reduced to a written memorandum. In that settlement, judgment in the amount of $1.15 million each was entered against CLP and CPU. ECS was released by the plaintiff The settlement agreement also assigned CLP's and CPU's indemnification, rights against SNET to the plaintiff.
CLP had previously filed an indemnification lawsuit against SNET on June 3, 1998 (CLP v. SNET, Superior Court, Judicial District of Waterbury at Waterbury, Civil Docket Number CV-98-014678S). That case is now a companion case to the subject action and has Civil Docket Number X03 CV98 0506741S. The plaintiffs attorney in this case, after negotiating the settlement of the original lawsuit, entered an appearance in lieu of Carmody Torrance, who represented CLP in the CLP v. SNET case and filed a revised complaint on April 26, 1999.
In accordance with the CPU/CLP agreement of April 1996, CLP satisfied CPU's $1.15 million judgment. On April 13, 1999, the plaintiff, as assignee, brought this action to enforce CPU's indemnification rights against SNET.
By motion dated July 31, 2001, SNET sought summary judgment against the plaintiff on the grounds that that the plaintiffs action is barred by the exclusivity provisions of the workers' compensation statute; or that C/P Utility Service Company, Inc.'s assignment of its indemnification rights to the plaintiff is void because it is contrary to public policy. On August 1, 2001 the plaintiff moved for summary judgment as to liability only on the grounds the indemnification agreement which he attempts to enforce is valid. As more fully set forth below, the law is not clear and there are disputes as to certain material facts and therefore, neither party is entitled to summary judgment.
Discussion of the Law and Ruling
Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage Lane Associates, CT Page 1807219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v. Middlesex Ins. Co.,219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434,429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 17-45, 17-46; Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson,176 Conn. 304, 309, 407 A.2d 971 (1978); Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); NewMilford Savings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stam, 224 Conn. 524, 530, cert. denied,114 S.Ct. 176, 126 L.Ed.2d 136 (1993); Connell v. Colwell, 214 Conn. 242,246, 571 A.2d 116 (1991). Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilson v. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989).
 Connecticut General Statutes 31-284 (a)
Section 31-284 (a) of the Connecticut General Statutes provides that the workers' compensation system is the exclusive avenue for recovery by an employee against his employer. "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment. . . ." Connecticut General Statutes § 31-284 (a).
In Szczapa v. United Parcel Svc., Inc., 56 Conn. App. 325, 743 A.2d 622,cert. denied 252 Conn. 951, 748 A.2d 299 (2000), the plaintiff, who had been injured in the course of his employment, sought to recover from the defendant employer, alleging that the employer was vicariously liable for the negligent operation of a motor vehicle by the plaintiffs fellow employee. The trial court granted the defendant's motion to strike, on the grounds that the action was barred by § 31-284 (a)and rejected the plaintiffs claim that the action could be maintained pursuant to § 31-293 a, which authorized actions against fellow employees for, CT Page 1808 inter alia, the negligent operation of motor vehicles. The Appellate Court held that § 31-293a did not authorize the plaintiffs action against his employer arising out of a fellow employee's negligent operation of the employer's motor vehicle; such a reading of that statute would contradict what the legislature clearly and unambiguously stated in limiting the employee's action against the employer in § 31-284 the Appellate Court. The Court in Szczapa stated:
 On several occasions, this court and our Supreme Court have resolved issues involving a plaintiffs attempt to maintain an action against his employer, contrary to the general rule set forth in § 31-284 (a) mandating that workers' compensation benefits are an employee's sole remedy against an employer for personal injuries arising out of and in the course of his employment. In Velardi v. Ryder Truck Rental, Inc., 178 Conn. 371, 423 A.2d 77 (1979), the plaintiff filed suit, under § 31-293a, against his employer for injuries sustained in a motor vehicle accident allegedly resulting from the employer's negligent operation of a motor vehicle. Our Supreme Court rejected the plaintiff s argument that the defendant was a "fellow employee" within the meaning of § 31-293a and held that "[s]o long as the employer and the alleged tortfeasor are one, the plaintiff is limited to the benefits provided by [workers'] compensation." Id., 377.
56 Conn. App. at 330.
The Court in Szczapa also relied on Hoyt v. Second Taxing District,183 Conn. 508, 439 A.2d 428 (1981), in which the plaintiff sought to hold his employer liable under § 31-293 as owner of the vehicle driven by a fellow employee, observing that "Ultimately, our Supreme Court [inHoyt] refused to `conclude from the mere provision for realignment of parties under certain circumstances that the legislature intended to contradict what it had clearly and unambiguously stated in § 31-284.'"56 Conn. App. at 331.
Szczapa, Velardi, and Hoyt all involved cases of actions asserted by injured employees directly against their employers. However in Ferrymanv. Groton, 212 Conn. 138, 561 A.2d 432 (1989) the Supreme Court held that § 31-284 (a) was not a bar to the prosecution of the third party complaint against the plaintiffs employer where a defendant sought indemnification from an employer in an action in which the injured employee was the plaintiff. The Court refused to allow § 31-284 (a) CT Page 1809 to act as a bar to the assertion of an "independent, legal duty" owed by the employer to the third party.
This case presents a hybrid between the procedural postures ofSzczapa, and Ferryman. The plaintiff is asserting a third party's indemnification claim directly against his employer. "Indemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest." Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694,697-98 n. 3, 694 A.2d 788 (1997). "Reimburse" is defined as "to make restoration or payment of an equivalent." Webster's Collegiate Dictionary, Tenth Edition. Since the plaintiff has not made any payments, but, instead, has received payments, the plaintiff has no claim to reimbursement. However, the plaintiff is the assignee of an indemnification claim from CPU, which did make some payments.
This case seems more analogous to the direct action cases such asSzczapa, Velardi, and Hoyt, where § 31-284 (a) barred suit against the employer, than it does to Ferryman, where the suit of a third party against the employer was not barred. However, given the uncertain state of the law on this issue, it would serve judicial economy to wait until after trial to determine whether § 31-284 (a) does or does not serve as a bar to the plaintiffs claims. Moreover, there are factual issues with respect to whether or not the plaintiffs action against his employer is barred by the public policy against double recovery. Therefore, summary judgment for either party based on § 31-284 (a) is not appropriate.
 The Assignment and Public Policy
The defendant claims that the assignment of CPU's indemnification rights to the plaintiff was contrary to public policy, specifically, the public policy embodied in the exclusive remedy of the workers' compensation statute, and the public policy against double recovery by employees for injuries sustained on the job.
One of the purposes of the workers' compensation system is "the avoidance of two independent compensations for the injury." Uva v.Alonzy, 116 Conn. 91, 98, 163 A. 612 (1933); see also Paternostro v.Edward Coon Co., 217 Conn. 42, 47-49, 583 A.2d 1293 (1991).
Although usually considered in connection with an employer's ability to subrogate its workers' compensation lien against an employee's recovery from a responsible third-party tortfeasor, the Connecticut Supreme Court has always found a strong public policy against double recovery and never specifically limited it to subrogation claims only. Durniak v. AugustWinter Sons, Inc., 222 Conn. 775, 779-80, 610 A.2d 1277 (1992); LibbyCT Page 1810v. Goodwin Pontiac-GMC Truck, Inc., 241 Conn. 170, 174, 695 A.2d 1036
(1997).
The Supreme Court has stressed the public policy against double recovery by allowing an employer that properly intervened in its employee's action against a third-party tortfeasor to set off future compensation claims against the employee's net proceeds from the third-part action. See Enquist v. General Datacom, 218 Conn. 19, 26,587 A.2d 1029 (1991).
The defendant argues that the effect of the assignment of CPU's indemnification rights to the plaintiff is to allow him double recovery for his injuries. If the 2.3 million dollars received by the plaintiff constituted full fair and reasonable damages for his injuries, then the defendant would be correct, and the assignment would contravene the public policy against double recovery. The parties have raised an issue of fact as to whether the 2.3 million dollars did constitute full damages to the plaintiff.
Even if the 2.3 million dollars received by the plaintiff was not full damages for his injuries, it may be that as a matter of law assignment of an indemnification right to one who has received the payments for which indemnification is sought is void and against public policy. Again the case law provides no clear guidance. The plaintiff correctly argues that the assignment of the right to recover money is the most common form of assignment. However, none of the assignment cases cited by the plaintiff involve the assignment of indemnification rights. See Bouchard v.People's Bank, 219 Conn. 465, 472, 594 A.2d 1 (1991); Second ExeterCorp. v. Epstein, 5 Conn. App. 427, 430, 499 A.2d 429 (1985); AllstateIns. Co. v. A.A. McNamara Sons, Inc., 1 F.3d 133, 135-36 (2d Cir. 1993); Bridgeport-City Trust Co. v. Niles-Bement-Pond Co., 128 Conn. 4,10, 20 A.2d 91 (1941).
In light of the uncertain nature of the law and a dispute as to the facts, granting the defendant's summary judgment motion on the basis of the public policy argument is not appropriate. By the same token, the plaintiff has no clear right to seek indemnification against the defendant and summary judgment in the plaintiffs favor as to liability would also be improper.
By the court,
Aurigemma, J.